# KOLINS SECURITY GROUP

## National Security Experts & Consultants

1528 Walnut Street * Suite 600 * Philadelphia, PA 19102 * 215.735.2131

March 8, 2019

Meister Law Firm
Attn:  Tonya J. Meister-Griffith, Esquire
Courthouse Tower, Suite 750
44 West Flagler Street
Miami, Florida 33130

       **Re:**    **Charlene Major v. Carnival Corporation**

       **D/I:**    **Saturday, May 20, 2017**

Dear Ms. Meister:

      Pursuant to your request, I have reviewed the following documents, all of which have presented enough information to render a professional opinion regarding the above captioned matter. I reserve the right to amend/supplement my report based on newly provided information.

      You requested that I review the following documents, photographs and testimony for the purpose of providing an expert opinion as to whether the management and staff of Carnival Corporation provided a reasonable level of security and safety for Charlene Major on Saturday, May 20, 2017.

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

# INDEX

| | | |
|---|---|---|
| I. | Methodology | 3 |
| II. | Reviewed Materials | 3 |
| III. | Qualifications | 3 |
| IV. | Summary of Event | 3 |
| V. | Summary of Opinions | 4 |
| VI. | Basis for Opinions | 5 |
| | A. Carnival's Documents for Charlene Major | 5 |
| | B. Carnival's Security Manual | 6 |
| | C. Defendants Internal Correspondence | 18 |
| VII. | Analysis, Conclusions and Opinions | 26 |

| | |
|---|---|
| References | 43 |
| Appendix A Persons Identified In Discovery | 44 |
| Appendix B Methodology | 45 |
| Appendix C Reviewed Materials | 46 |
| Appendix D Qualifications | 47 |

I.    **METHODOLOGY**

See Appendix "B"


II.   **REVIEWED MATERIALS**

See Appendix "C"


III.  **QUALIFICATIONS**

See Appendix "D"


IV.   **SUMMARY of EVENT**

On or about May, 20, 2017, Defendant, Carnival Corporation ("Carnival") facilitated a cruise upon its vessel, Carnival Imagination wherein it served alcoholic beverages to passengers and provided various casino games. At approximately 3:00 am[1] Plaintiff, Charlene Major was a passenger upon Carnival Imagination and proceeded to play black jack at a table with other passengers, including Timothy Stordahl whom she met earlier that day at the casino[2] in the early morning hours, she observed Stordahl *"fell to the table in a drunken stupor. He fell, like knocked himself into - - he wasn't - - his balance was not of normal gait."*[3]  Major testified that Timothy displayed signs of visible intoxication such as *"slurred speech, red eyes. He wasn't the same person that I saw earlier that day."* *"Timothy started to assault and aggress everybody at the table." "I'm going to say Timothy was being really obnoxious. Timothy was yelling- -...[4] I thought I had a rapport with Timothy. So I had tried to get him off of the dealer that he was ranting on."*[5]  *"I don't know what the exact words were, but he was very - - he had her face turning red. He was being really obnoxious like, you know, again, with the "Come on deal better. Do something." Throwing the cards back at her. So the gentleman behind came closer to alleviate the situation, and I tried to say something to him, like, "Hey, you know, Tim, come on. Let's play. Let's go ahead and let her go," and that's when it just got crazy."*[6]  After Timothy

---

[1] Major, 72
[2] Major, 73;74
[3] Major, 76
[4] Major, 77-78
[5] Major, 78
[6] Major, 78-79

threatened Major, "*I asked Maurice to get security. I asked Maurice to get security more than once. Because I felt that it was escalating and escalating quickly, and I was there alone, and there was nobody to help me there.*[7] Stordahl's daughter, Elaine Barrera physically attacked Major, causing serious injury to her person.

## V.   SUMMARY of OPINIONS

On or about May 20, 2017, Defendant, Carnival Corporation ("Carnival") owned, operated, managed, maintained and/or controlled the vessel, known as Carnival Imagination. Defendant, Carnival had an obligation to provide a safe environment to its patrons and serve alcoholic beverages in a responsible manner. Defendant, Carnival failed to provide a safe environment to its passengers, specifically, Plaintiff, Charlene Major when it failed to follow its policies and procedures to properly patrol, respond to an incident and remove Stordahl and Barrera away from Major and out of the casino. Further, there was no mechanism put in place to ensure crew members charged with patrolling and responding to incidents understood their training and were able to properly and adequately serve alcoholic beverages reasonably.

Similarly, Defendant, Carnival failed to provide a safe environment to its passengers, specifically, Plaintiff, Charlene Major when it served/furnished alcoholic beverages in an unreasonable and unsafe manner to passengers, Elaine Barrera and Timothy Stordahl.

- Defendant, Carnival had an obligation to train its crew members on the recognized and accepted standards regarding proper alcohol service but failed to satisfy its obligation due to inconsistent and inadequate training of crew members. There was no mechanism put it place to ensure consistency and continuity of trainings for alcohol service upon the vessel.

- There was no mechanism put in place to ensure crew members charged with serving alcoholic beverages understood their training and were able to properly and adequately serve alcoholic beverages reasonably.

- Defendant Carnival failed to make any reasonable assessment of Stordalh and/or Barrera prior to serving them numerous "double" drinks leading up to the verbal, turned violent physical attack upon Plaintiff, Major.

---

[7] Major, 91

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

As a direct and proximate result of Defendant, Carnival's acts and/or omissions, Barrera and Stordahl became visibly intoxicated and Defendant, Carnival continued to serve Barrera and Stordahl despite their visible intoxication. In their intoxicated state, Stordahl and/or Barrera engaged in a verbal assault with racist comments directed to Plaintiff, Major, which then escalated into a violent, physical assault when Barrera charged, struck and kicked Plaintiff, Major about her body causing Major to suffer numerous injuries. Major also reported that Stordahl was involved in the physical attack.

## VI.   BASIS FOR OPINIONS

### A. CARNIVAL'S DOCUMENTS FOR CHARLENE MAJOR

Below is a list of purchases, deposits and credits made under the name Charlene Major from 5/18/17 to 5/21/17. (P. 7)

| DATE | TIME | LOCATION/DESCRIPTION | RECEIPT | FOLIO | AMOUNT |
|------|------|----------------------|---------|-------|--------|
| 5/18/2017 | 01:31 PM | REFUNDABLE ONBOARD CREDITS | 56699714 | 6561 | -$12.29 |
| 5/18/2017 | 01:31 PM | NON-REFUNDABLE ONBOARD CREDITS | 56699714 | 6561 | -$12.50 |
| 5/18/2017 | 09:15 PM | SPIRIT WINE CELLAR served in Main Dining Room | 570324 | 6561 | $20.00 |
| 5/18/2017 | 10:07 PM | CASH DEPOSIT | 56717185 | 6561 | -$5.00 |
| 5/18/2017 | 10:34 PM | DREAM CASINO BAR | 571684 | 6561 | $8.05 |
| 5/18/2017 | 11:38 PM | DREAM CASINO BAR | 572778 | 6561 | $10.29 |
| 5/19/2017 | 01:44 PM | CASH DEPOSIT | 56777512 | 6561 | -$100.00 |
| 5/19/2017 | 01:59 PM | DREAM CASINO BAR | 578646 | 6561 | $10.29 |
| 5/19/2017 | 03:02 PM | DREAM CASINO BAR | 579739 | 6561 | $10.29 |
| 5/19/2017 | 07:18 PM | DREAM CASINO BAR | 583200 | 6561 | $10.29 |
| 5/19/2017 | 09:33 PM | SPIRIT SERVICE BAR served in Main Dining Room | 585218 | 6561 | $5.18 |
| 5/19/2017 | 11:33 PM | DREAM CASINO BAR | 587151 | 6561 | $8.05 |
| 5/19/2017 | 11:49 PM | DREAM CASINO BAR | 587707 | 6561 | $10.29 |
| 5/20/2017 | 02:35 AM | DREAM CASINO BAR | 588850 | 6561 | $10.29 |
| 5/20/2017 | 06:47 AM | MEDICAL FSS | 589001 | 6561 | $ .00 |
| 5/20/2017 | 11:38 AM | LOBBY ATRIUM BAR | 589905 | 6561 | $6.58 |
| 5/20/2017 | 11:19 PM | CASH REFUND | 56890752 | 6561 | $20.21 |
| 5/21/2017 | 12:33 AM | ROOM SERVICE FSS | 597538 | 6561 | $ .00 |

THIS SPACE LEFT BLANK INTENTIONALLY

5

## B. CARNIVAL'S SECURITY MANUAL

➢ 190 page document that was 1st placed in to publication on 10/1/03 (P.20)
Chapter 4.6 Security Patrols- Date 7/24/14 (10 revisions) (P. 44-47)

**4.6.2 Intoxicated or Aggressive Individuals**
If a guest is considered under the influence of alcohol, the Bar Manager will instruct the bar personnel *not to serve* that person any more alcohol. In a case of extreme intoxication, the Chief Security Officer will invite the person to follow him to their assigned cabin. A brief period of surveillance is suggested (at least for the first hour). The medical department will be informed if the condition of the guest, warrants this action. Ref: SMS/COMM/P021

➢ Chapter 4.10 Detention / Restraint of Guest / Crew- Date 11/28/12 (0 revisions)    (P.59-63).

**2. The Master has, under the provisions of the Merchant *Shipping Act*, the right to restrain a person on the ship as follows:**

**2.1** It is within the Master's right to restrain a Crew Member on the ship, as the granting of shore leave is the prerogative of the master, *which he may withdraw at any time.*

**2.2** If feasible, before restraining a Guest on the ship, the Master shall first consult with Security Services.

**2.3** A Guest or a Crew Member must be restrained via confinement to a Cabin / Detention Facility if in the Master and or Ship's Doctor reasonable opinion: The Guest or Crew Member's presence might be detrimental to the health or safety of such Guest or Crew Member or the other Guests or Crew on board. (Safety concerns include the preservation of good order and discipline on board). Such restraint must in law be considered to be necessary or expedient; and where the Master, with reasonable cause does in fact believe that such restraint is necessary and can only be continued for as long as this consideration with *reasonable cause remains.*

**2.4** If the decision is made by the Master to restrain a Guest or Crew Member via confinement to a Cabin / Detention Facility, the Staff Captain assisted by a Security Officer shall be responsible for the implementation of such restraint.

**2.5** If *may* be necessary to forcibly restrain a Guest or Crew Member who is a threat to the safety of other persons, the ship or themselves.

**2.6** The Master should decide the degree of security to be imposed, bearing in mind the person's violent behavior, mental, or emotional condition, or the seriousness of the offence for which he may be restrained.  In reaching his decision the Senior Doctor should be consulted. (4.10.1 Custody Assessment Report)

6

Chapter 5.16 Handling of Intoxicated or Aggressive Individuals- Date 10/12/09 (2 revisions) (P.111-112).

**SOME EXAMPLES OF SITUATIONS COMMONLY CONFRONTED:**

1) Domestic Disputes - husband and wife - Parents and children - Friends
2) Disruptive Teenagers - Not properly supervised by parents – Gathering in groups
3) Disputes with strangers - Disco/Bar - Dispute over lounge chair - Skipping line

The situation is often exacerbated when there's drinking involved. Common - People are on vacation and letting their hair down

**STATES OF INEBRIATION:**

1) One or two drinks - Loss of inhibitions - Feeling good - Romantic
2) Three to Four drinks – Frisky - Braver - Possibly aggressive (This may be the hardest to deal with)
3) Five to Six drinks - Staggering - Loss of coordination - Slurring of words
4) Seven to Eight Drinks - Falling down - crying - Unconscious

States of intoxication vary with each individual. Factors such as, body weight, age, physical condition, how much the person had to eat, the persons initial state of mind, and how often the person drinks can effect the persons level of intoxication. In most cases, when a person has been drinking, they are usually harder to deal with.

When you first arrive at the scene, analyze and evaluate the situation.
Form a plan of action - Coordinate with other Security Officers - radio for backup, if necessary
Try not to deal with an aggressive person without backup unless absolutely necessary (Someone being seriously hurt)
The first one on the scene will be in charge until relieved by a superior
Keep the CSO and Staff Captain informed

**Safety** always **comes first**
Anticipate problems

Prevent Injury by:
- o Calling a manager
- o Calling security
- o Separating guests from the situation

Never touch or try to physically restrain a violent guest

Charlene Major v. Carnival Corporation
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: **May 20, 2017**
March 8, 2019

**Actions to be taken with an intoxicated guest**
1. **First, Notify a Manager**
2. **Do not serve alcohol to an already intoxicated guest. Offer nonalcoholic drinks such as coffee, soft drinks or a zero content cocktail. Do not simply refuse service.**
3. **Discontinue service. That decision must final.**
4. **Do not argue, or retaliate to what a guest says to you. Remain calm and call security to explain if need be.**
5. **When dealing with groups, enlist the help of other group members who may be sober.**
6. **Do not use judgmental statements such as "you're drunk!" Do not use terms such as "inebriated" or "intoxicated". Be tactful and diplomatic.**
7. **Always keep a record of what happens in case any for the action is taken by the guest.[8]**

**Carnival Cruise Line Responsible Service of Alcohol**

**OBJECTIVE**
- Responsible Service of Alcohol is a combined effort that involves the coordination and cooperation od Bar Management, Bar Staff and our Security Service.
- Showing out guests and team members that we care and respect them.
- Ensuring the **SAFETY** and **SECURITY** of our guests and team members.[9]

**WHY IS RESPONSIBLE SERVICE OF ALCOHOL IMPORTANT**
- It's the law
- Safety and Comfort of both our guest and team members
  - No one wants to be around a disruptive guest
  - Ensures only guests of legal drinking age are able to consume alcohol
  - Give our company and servers credibility
  - Ensures employee will not be subject to disciplinary action

---

[8] NCL-19423-488; 4-11
[9] NCL-19423-492

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

- Prevent legal action against YOU and the company
- Guest expectation
- To ensure our guests have a Fun and Memorable Vacation
- Maintain Company Image and reputation
- Return business[10]

**HOW TO PROVIDE RESPOSNIBLE ALCOHOL SERVICE**

- …
- Never serve a guest who is obviously intoxicated
- …
- If in doubt, contact your Manager immediately
- Use the Traffic Light System[11]

**PHYSICAL AND BEHAVIORS SIGNS OF INTOXICATION**

- Relaxed inhibitions
- Impaired judgment
- Slowed reaction time
- Impaired motor coordination[12]

**RELAXED INHIBITONS**

- Be overly friendly
- Be unfriendly
- Use foul language
- Become loud
- Make rude comments[13]

**IMPAIRED JUDGMENT**

- Complain about the strength of the drink after having consumed others of the same strength
- Begin drinking faster or switch to larger or stronger drinks
- Make irrational or argumentative statements
- Become careless with money (i.e. buying drinks for strangers)[14]

---

[10] NCL-19423-494
[11] NCL-19423-498
[12] NCL-19423-505
[13] NCL-19423-506
[14] NCL-19423-507

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

## SLOWED REACTION TIME

- Talk or move slowly
- Become drowsy
- Be unable to concentrate, lose their train of thought, or become forgetful
- Become glossy-eyed, lose eye contact, or lose the ability to focus[15]

## IMPAIRED MOTOR COORDINATION

- Stagger, stumble, fall down or bump into objects
- Be unable to pick up objects, or may drop them
- Spill drinks or miss their mouths when drinking
- Sway when sitting or standing
- Slur their speech
- Have difficulty lighting a cigarette[16]

## HOW TO INDENTIFY INTOXICATION

- Whenever serving alcohol to guest, you must look for the signs of Intoxication
  - Crude Behavior
  - Becoming loud and boisterous
  - Annoying other guests
  - Spilling drinks
  - Becoming agitated or argumentative
  - Falling asleep
  - Clumsy uncoordinated movements such as swaying, stumbling or falling down
  - Slurred speech
  - Glassy eyes, loss of focus/eye contact
  - Unable to light a cigarette
  - Rambling conversation or nonsensical statements
  - Difficulty signing bar checks
- A guest who appears to be intoxicated needs to be pointed out to you BOM on duty, other bartenders and security even if they have not tried to order more drinks. An intoxicated guest can be a hazard to themselves and other guests[17]

---

[15] NCL-19423-508
[16] NCL-19423-509
[17] NCL-19423-510-511

## TRAFFIC LIGHT SYSTEM—GREEN LIGHT

- Status of Guest
  - Looks and acts sober
  - No visible signs of intoxication
- Points to Note
  - Monitor the pace at which the guest is consuming alcoholic drinks
  - Offer water and other non-alcoholic beverages between the consumption of alcoholic drinks.[18]


## TRAFFIC LIGHT SYSTEM—YELLOW LIGHT

- Status of Guest
  - Overly friendly with strangers and crew
  - Speaking loudly or acting in an annoying manner
  - Confrontational and aggressive towards others
  - Stumbling, swaying and slight loss of coordination
- Service Goals
  - Dramatically slow down the rate a guest is consuming Alcohol
- Service Style
  - Caution! Caution! Caution!
  - Offer the guest water, coffee or other non-alcoholic beverages
  - Closely monitor the guest's pace of consumption[19]

## TRAFFIC LIGHT SYSTEM—RED LIGHT

- Status of Guest
  - Falling asleep
  - Swaying and Astaggering
  - Slurred Speech
  - Spilling drinks
- RSA Goals
  - Stop the service of alcoholic beverages
  - Take Action
- Service Goals
  - Politely inform the guest that you are unable to serve them any more alcoholic beverages
  - Provide the guest with a glass of water

---

[18] NCL-19423-514
[19] NCL-19423-515

- Inform the BOM on duty as well as security of the situation and guest folio number
- Keep a close eye on the guest and try to keep them n the location
- Coordinate with Security when they arrive on the scene[20]

### PREVENTING GUESTS FRM BECOMING INTOXICATED
Avoid over pouring when mixing drinks
Avoid serving a guest more than one drink at a time[21]

### SUMMARY

- Responsible alcohol service is everyone's responsibility—Especially yours!
- Follow the Traffic Light System and when in doubt, contact the BOM on duty
- Water, Water, Water
- …
- Always inform the BOM on duty of an intoxicated guest or underage guest trying to purchase alcohol
- Never allow anyone who appears to be intoxicated and unable to look after themselves leave your area until the BOM and Security arrive
- Be vigilant and observant. Make sure you are aware of what is happening in YOUR bar and area of responsibility.[22]

The alcohol policy discussed in the security manual and the alcohol policies of Defendant, Carnival were contradictory and inconsistent. Neither spoke to the casino crew member's responsibility regarding assessing and identifying visibly intoxicated individuals. In a location where drinks can be liberally comped or regularly brought to a high roller, this is a missed opportunity to protect passengers from the dangers of being visibly intoxicated, themselves or if others are visibly intoxicated and causing some sort of disruption. Both policies use incorrect terms to describe the visibly intoxicated person and fail to even define those various terms. This offers little direction and/or guidance to the crew member for whom that policy was created for to follow and carry out his/her job responsibilities. Module 4 fails to address fails to speak to the metabolic process of eliminating alcohol. Further, neither policy offers any guidance regarding how, what and over what period of time to serve alcoholic beverages responsibly. Instead, it appears

---

[20] NCL-19423-516
[21] NCL-19423-520
[22] NCL-19423-533

Defendant, Carnival's crew members did whatever they wanted to do and made up their own impromptu rules absent proper supervision by management.

"The Casino Manager is empowered to exercise direct operational control over all areas of the Casino Operation onboard a vessel and shall ensure the smooth, safe and efficient running of the entire Casino. In order that the above be achieved, the Casino Manager is expected to spend most of their time as a visible presence both in and around the table and slot areas." The primary job functions include, "assist in any duties of a safety nature as requested by Ship's Command. On CCL ships, as part of your safety responsibility, your Position/Rank has been identified as a "Trainer" within the Training, Drill and Assessment program." Further it is noted that a Casino Manager will have "a comprehensive knowledge and understanding of that GCO Operations' Manual", "Continuously promote the highest standards in guest courtesy through interaction with Guests, with a goal of increasing overall business potential, "resolve complaints/disputes with Guests as quickly and as amicably as possible. Any unresolved Guest disputes/Claims to be documented and reported per current policy and procedure to the Executive Office." "Safeguard assets: The Casino Manager must ensure that the integrity and security of the table games, slots and accounting areas are maintained; and that they are not in any way compromised by either a Guest or a member of staff." [23] Further, the Casino Manager is "responsible for creating a non-threatening and welcoming atmosphere for all employees."[24]

An Assistant Casino Manager has the same responsibilities as the Casino Manager.[25]

The Casino Supervisor has similar responsibilities as discussed above, and also "attempt to resolve any guest disputes that may arise and report all unsettled claims to the Casino Management immediately."[26] Further, the Casino Supervisor has the additional responsibility to "Arrange appropriate complimentary beverages for Guests per current policy."[27] This description offers no guidance regarding responsible alcohol service, despite the responsibility to "Arrange appropriate complimentary beverages for Guests per current policy."[28]

---

[23]NCL-19423-296
[24]NCL-19423-297
[25] NCL-19423-300
[26] NCL-19423-301-302
[27] NCL19423-302
[28] NCL19423-302

The bartender's duties and responsibilities included, *"Advise Bar Management whenever a guest(s) appears intoxicated and need to be monitored for their best interests."*[29] Similarly, bartenders are to "Advise Bar Management whenever a guest(s) have been refused service due to excessive alcohol consumption."[30] However, there is no explanation regarding what constitutes "excessive alcohol consumption." Further, *"Bartenders are the supervisors of their bars and are responsible for the bar stock, par levels and bar servers, bar stewards working in their responsive bars."*[31] Bartenders were expected to have a working relationship with the: *Bar Operations Manager, Assistant Bar Ops Manager, Dining room Management, Bar Servers, Bar Stewards and wine cellar stewards.*[32]

Bar Waiters were responsible to, *"Advise Bar management or security when a guests(s) appear to be intoxicated and behaving in such a way that they need to be monitored for their well being"* and had a working relationship with the: Bar Manager, Assistant Bar Manager, Bar Servers, Bar Stewards, and Dining room Management."[33]

**Bar Service in Casino**
**Important Information**

There are some VIP guests who cruise and play in the casino and these are called Marker Players or High Rollers. The casino staff gives extra special attention to them as they spend a lot of money in the casino. The bar server has to be aware of these guests and the service to Marker Players as well as everyone in the casino should be the very best.

> The casino manager often buys complementary drinks for the Marker Player and all drinks are charged to the manager or supervisors folio number. When taking an order from a Marker Player always confirm the order with the supervisor at the table who will give you their fully or never. Never take a complementary drink order without checking with the supervisor first.[34]

---

[29] NCL-19423-306
[30] NCL-19423-474
[31] NCL-19423-307
[32] NCL-10423-307
[33] NCL-10423-308
[34] NCL-19423-447

## SUMMARY OF DRINKS CONSUMED FOR STORDAHL

Timothy Stordahl Drinks on May 18th[35]

Timothy Stordahl Drinks on May 19th
- 12:06 am Belvedere **free** (Winner Luck) $50 tip
- 12:27 am Belvedere **free** (Winner Luck)
- 12:55 pm layer cake cab sauv (Ovation Theatre Port) $5 tip
- 1:12 pm layer cake cab sauv (Ovation Theatre Port) $5 tip
- 2:19 pm Long Island Iced Tea **free** (Winners Luck) $50 tip
- 2:55 pm Long Island Iced Tea **free** (Winners Luck) $50 tip
- 6:21 pm layer cake cab sauv (Winners Luck) $10 tip
- 7:00 pm Patron Margarita (Piano Bar) $10 tip
- 7:04 pm Souvenir Cordial (Piano Bar 88) $10 tip
- 7:36 pm Premium Souvenir Cordial (Piano Bar 88)
- 7:37 pm Patron Margarita, Grand Marnier (Piano Bar 88) $20 tip
- 8:41 pm Long Island Iced Tea (Breeze Lobby Bar) $10 tip
- 8:54 pm Bacardi (Breeze Lobby Bar) $5 tip
- 9:52 pm Grey Goose and Grey Goose (double) (Winners Luck)
- 9:59 pm Grey Goose **free** (Winners Luck) $25 tip
- 10:15 pm Captain Morgan **free** (Winners Luck) $50 tip
- 10:18 pm Bacardi, Belvedere (double) (Piano Bar 88)
- 10:38 pm Belvedere (double) (Piano Bar 88) $50 tip
- 11:20 pm Belvedere (double) **free** Bacardi (double) **free** (Piano Bar) $50 tip
- 11:50 pm Belvedere (double) (Piano Bar 88) $50 tip

Timothy Stordahl Drinks on May 20th
- 12:14 am Belvedere **free** (Winners Luck) $50 tip
- 1:00 am Belvedere **free** (Winners Luck) $50 tip
- 1:46 am Belvedere **free** (Winners Luck) $50 tip
- 2:32 Belvedere **free** (Winners Luck) $25 tip
- 3:32 am Bacardi **free** (Winners Luck) $50 tip
- 7:13 pm four Souvenir Cordial (Piano Bar 88) $50 tip
- 8:26 pm Belvedere **free** (Winners Luck) $50 tip
- 8:32 pm Long Island Iced Tea (Breeze Lobby Bar) $30 tip

---

[35]The records of the number of drinks served/furnished to Stordahl please see at NCL 19423-552-NCL 19423-606. The service of alcohol to Stordahl on May 18 is similar to the service of alcohol noted in my report for May 19th and May 20th.

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

- 8:35 pm two Patron Tequila Silver, Pirates Punch, two Does Equis Beer (Breeze Lobby bar) $50 tip
- 9:40 pm Dos Equis Beer (Breeze Lobby Bar) $50 tip
- 10:02 pm three Long Island Iced Tea (Breeze Lobby Bar) $50 tip
- 10:17 pm two Patron Tequila Silver (Breeze Lobby Bar) $25 tip
- 10:49 pm Patron Tequila Silver, Bacardi (double), Long Island Ice Tea (Piano Bar 88) $50 tip
- 10:53 pm Dos Equis Beer (Piano Bar 88)

Timothy Stordahl Drinks on May 21, 2017
- 1:32 am Belvedere **free** (Winners Luck) $50 tip
- 1:07 pm Bud Light beer **free** (Winners Luck) $50 tip

Elaine Barrera Drinks
- May 19, 2017 10:45 pm Barcardi (double) (Piano Bar)
- May 20, 2017 12:18 am Bacardi (double) (Winners Luck Bar) $2 tip
- May 20, 2017 12:56 am Bacardi (double) (Winners Luck Bar) $2 tip
- May 20, 2017 3:21 am Bacardi (double) (Winners Luck Bar) $1 tip

    During the time of writing this report, I received an expedited but uncertified copy of a recent deposition given by Elaine Barrera which I have reviewed. Ms. Barrera's testimony revealed the following with relation to the amount of alcohol she consumed:

    Q. Okay. If you had to make your best estimate of how many Rum and Cokes you had from the time that you started karaoke until the time of the incident, how many Rum and Cokes would you say that was?

    A. THE WITNESS: Six or seven maybe.

    Q BY MR. DRURY: Six or seven and all doubles, correct?

    THE WITNESS: I don't -- I don't think it was -- I don't know. I know that in the piano bar, in the casino, I ordered double. But I don't recall doing that in karaoke, no.[36]

---

[36]Barrera, 97

Charlene Major v. Carnival Corporation
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: May 20, 2017
March 8, 2019

Q BY MR. DRURY: Is it fair to say you don't know, one way or the other, whether they were singles or doubles in the karaoke?

THE WITNESS: Right. Exactly, yes.[37]

Q. I think you mentioned that you headed over to Karaoke around 8:00 p.m. on May 19th, 2017; is that correct.

A. THE WITNESS: I believe so, yes. Right -- roughly, yeah.

Q BY MR. DRURY: Okay. And I think you said earlier you had seven or eight drinks between the time you left dinner and the time of the incident; is that right?

THE WITNESS: Correct.

Q BY MR. DRURY: And you agree that several of those drinks were double?

THE WITNESS: The ones that were from the piano bar and at the casino. I don't recall the ones in karaoke.

Q What was your height on May 20th, 2017?

A I'm five-two.

Q What was your weight on May 20, 2017?

A I'm 170.

Q Okay. What was your father's height on May 20, 2017?

A Like five-eleven, 230 maybe.[38]


Defendant, Carnival facilitated a culture of drinking with its various promotions of selling/upselling alcoholic beverage and its "Make it a Double" program.

**"Make it a Double"**

"Make it a Double"= an offer for a second shot of beverage for just $3 more
  ✓ Applicable only to the Punchline or comedy show, show lounge, and dining rooms during dinner service. Should be offered after offering Classic

---

[37]Barrera, 98
[38] Barrera, 126-127

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: May 20, 2017
March 8, 2019

Cocktails or Martinis. When I guest orders any type of "single" cocktail (ex: Jack and Coke, amaretto sour or just straight shot of liquor) at these locations they should be offered as the "Make it a Double" offer.

✓ The more expensive the beverage is, the better the value. For example if a guest orders Gray Goose instead Absolut, the server should explain and that for double great goose shot it will just be $7.50 +3 dollars equals $10.50 with "make it a double" offer.

✓ …

✓ Following cocktails is not included in the "make it a double" program:

✓ Frozen cocktails, martinis, classic cocktails, daily specials.

✓ This offer is only available to the guest in one special glass-12 oz Collins glass.

✓ If a guest orders a shingle shot of any liquer would like to "make it a double" then a footed highball for on the rocks or a brandy snifter/rocks glass for straight up shall be given.

✓

**Remember—Never offer "Make it a Double" to guest that appears to be intoxicated![39]**

As illustrated above, both Stordahl and Barrera consumed numerous "double" drinks leading up to the verbal assault and violent attack on Plaintiff, Major. Defendant, Carnival had inconsistent policies relating to the service of alcoholic beverages. Further, Defendant Carnival continued to serve/furnish Stordahl and Barrera despite their apparent visible intoxication. The actions and/or omissions of Defendant, Carnival evidenced a tolerance of disorderly conduct upon its vessel, specifically within the casino area.

THIS SPACE LEFT BLANK INTENTIONALLY

---

[39] NCL-10423-409 (70-50-2)

Charlene Major v. Carnival Corporation
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I:  May 20, 2017
March 8, 2019

## C. DEFENDANTS INTERNAL CORRESPONDENCE

Page 5-6 Email from Casino Manager Jennifer Gianan to management in relation to Stordahl's disorderly behavior- *DATED Friday May 19th, 2017 1:23AM- PRE-INCIDENT*

**From:** IMAGINATION CASINO MANAGER
**Sent:** Friday, May 19, 2017 1:23 AM
**To:** IMAGINATION HOTEL DIRECTOR; IMAGINATION GUEST SERVICES MANAGER
**Cc:** IMAGINATION STAFF CAPTAIN; IMAGINATION CHIEF SECURITY; IMAGINATION CASINO
**Subject:** Mr. Timothy Stordahl
**Importance:** High

Good morning Guns and Jorge,

I just want to give you a heads up with the demeanor of one of our high end player this cruise.
Mr. Stordahl is indeed our top player in the casino but he is very rude and is verbally abusive to the staff.
Although it's true that his play is significant but this don't justify his action of belittling, cursing and treating the staff with disrespect.

I spoke to him last night and he doesn't care about what I say as he is claiming that he can buy everyone with his money.
On his way back to his cabin, he cursed at me "F.Y."

3

If he continues to be like this, he will leave me with no choice but to stop his play and will not allow him to spend time in the casino.

I will keep you posted.

Kind Regards,

Jennifer Gianan,
Casino Manager | Carnival Imagination
*Global Casino Operations*
Office 0720 | Cell 7915 | e: imcasmgm@carnival.com
♥♣♦♠

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

Page 5 Email from Chief Security Officer Simplicio D'Souza to management in relation to Stordahl's disorderly behavior- *DATED Friday May 19th, 2017 8:25AM- PRE-INCIDENT*

From: IMAGINATION CHIEF SECURITY
Sent: Friday, May 19, 2017 8:52 AM
To: IMAGINATION CASINO MANAGER; IMAGINATION HOTEL DIRECTOR; IMAGINATION GUEST SERVICES MANAGER
Cc: IMAGINATION STAFF CAPTAIN; IMAGINATION CASINO; IMAGINATION SECURITY; IMAGINATION ASSISTANT CHIEF SECURITY OFFICER
Subject: RE: Mr. Timothy Stordahl

Good Morning Jennifer,
Pls. call CSO/ACSO when guest Mr. Timothy Stordahl comes to play at the casino.

Regards,
Simplicio D'Souza
Chief Security Officer  Carnival Imagination
Carnival Cruise Line
office- 0734 (Ext. . . . )  email: snchsec@carnival.com

*Carnival* 〜〜〜〜〜

*IM2017-077*

From: IMAGINATION CASINO MANAGER
Sent: Saturday, May 20, 2017 5:40 AM
To: IMAGINATION CHIEF SECURITY; IMAGINATION HOTEL DIRECTOR; IMAGINATION GUEST SERVICES MANAGER
Cc: IMAGINATION STAFF CAPTAIN; IMAGINATION CASINO; IMAGINATION SECURITY; IMAGINATION ASSISTANT CHIEF SECURITY OFFICER
Subject: RE: Mr. Timothy Stordahl

Hi All,

Mr. Stordahl got involved on a verbal fight early this morning along with his daughter (according to their conversation). He was okay the whole day until the last hour when he was playing with Ms. Charlene Major who happened to be on the same note with him as well when it comes to their way of talking.

Luckily, the other guys didn't lose their control and give in as he was inviting them for a fight while the other ladies are already on the floor physically fighting.

Kind Regards,

Jennifer Gáman,
Casino Manager | Carnival Imagination
Global Casino Operations
Office 0720 | Cell 7915 | e: imcasmgr@carnival.com
▼ ◆ ⋄ ◆

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

**Page 4 Email from Hotel Director Guna Chellam to management in relation to Stordahl's disorderly behavior -** *DATED Saturday May 20th, 2017 8:24AM* **and reply from Casino Manager Jennifer Gianan to management-** *Dated Saturday May 20th, 2017 10:59AM- Post incident*

**From:** IMAGINATION HOTEL DIRECTOR
**Sent:** Saturday, May 20, 2017 8:24 AM
**To:** IMAGINATION CASINO MANAGER
**Cc:** IMAGINATION STAFF CAPTAIN; IMAGINATION CASINO; IMAGINATION SECURITY; IMAGINATION ASSISTANT CHIEF SECURITY OFFICER; IMAGINATION CHIEF SECURITY; IMAGINATION GUEST SERVICES MANAGER
**Subject:** RE: Mr. Timothy Stordahl

Jen:

Did you notify the ACSO or Sos on duty?

Warm Regards

GUNA CHELLAM
Hotel Director, Carnival imagination
Carnival Cruise Line
Office 0714 | Cell 7803 | e: mhotel@carnival.com

21

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

Page 4 Email Casino Manager Jennifer Gianan to management- *Dated Saturday May 20th, 2017 10:59AM- Post incident*

**From:** IMAGINATION CASINO MANAGER
**Sent:** Saturday, May 20, 2017 10:59 AM
**To:** IMAGINATION HOTEL DIRECTOR
**Cc:** IMAGINATION STAFF CAPTAIN; IMAGINATION CASINO; IMAGINATION SECURITY; IMAGINATION ASSISTANT CHIEF SECURITY OFFICER; IMAGINATION CHIEF SECURITY; IMAGINATION GUEST SERVICES MANAGER
**Subject:** RE: Mr. Timothy Stordahl

Hi Guna,

Yes. I was the one who made the phone call.
The incident happened so quick as they were okay in the beginning.
Both party was very aggressive.

Kind Regards,

Jennifer Gianan.
Casino Manager | Carnival Imagination
Global Casino Operations
Office 0720 | Cell 7915 | e: imcasmgr@carnival.com

22

Charlene Major v. Carnival Corporation       **D/I: May 20, 2017**
Expert Liability Report by Russell Kolins, BSSM, ICACP      March 8, 2019

Page 3-4 Email from Hotel Director Guna Chellam to management in relation to Stordahl's disorderly behavior - *DATED Saturday May 20th, 2017 6:15PM*

**From: IMAGINATION HOTEL DIRECTOR**
**Sent: Saturday, May 20, 2017 6:15 PM**
**To: IMAGINATION STAFF CAPTAIN**
**Cc: IMAGINATION CASINO MANAGER; IMAGINATION GUEST SERVICES MANAGER; IMAGINATION CHIEF SECURITY; IMAGINATION CAPTAIN**
**Subject: IMPORTANT : Mr. Timothy Stordahl**

**Good Evening Fabio:**

*/M 2017 - E /7*

Just a quick note to advise you that the Casino Mgr. is suggesting to ban Tim from playing in Casino to avoid any more issues. Please call to discuss. Thx

Warm Regards

GUNA CHELLAM
Hotel Director, Carnival Imagination
Carnival Cruise Line
Office 0714 | Cell 7803  e: imhotel@carnival.com

Page 3 Email from Casino Manager Jennifer Gianan to management in relation to Stordahl's disorderly behavior- *DATED Saturday May 20th, 2017 6:25PM*

**From: IMAGINATION CASINO MANAGER**
**Sent: Saturday, May 20, 2017 6:25 PM**
**To: IMAGINATION HOTEL DIRECTOR; IMAGINATION STAFF CAPTAIN**
**Cc: IMAGINATION GUEST SERVICES MANAGER; IMAGINATION CHIEF SECURITY; IMAGINATION CAPTAIN**
**Subject: RE: IMPORTANT : Mr. Timothy Stordahl**

**Good afternoon All,**

My suggestion is to ban both parties involved in order to avoid further issues.
Since they are sailing with family or group, it will not be fair for us to ban only party as both were involved.

On the other hand, if suggested plan is not ideal as I know Mr. Stordahl came onboard primarily to gamble and stopping him might give us more complications,
providing us security assistance while he is playing would be fine, too.

Kind Regards,

Jennifer Gianan.
Casino Manager | Carnival Imagination
*Global Casino Operations*
Office 0720 | Cell 7915 | e: imcasman@carnival.com
♥♣♦♠

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: May 20, 2017
March 8, 2019

Page 3 Email from Staff Captain Fabio Aceto to **management in relation to Stordahl's** disorderly behavior- *DATED Saturday May 20th, 2017 6:43PM*

**IMAGINATION CHIEF SECURITY**                    *IM2017-077*

| | |
|---|---|
| **From:** | **IMAGINATION STAFF CAPTAIN** |
| **Sent:** | **Saturday, May 20, 2017 6:43 PM** |
| **To:** | **IMAGINATION CASINO MANAGER; IMAGINATION HOTEL DIRECTOR** |
| **Cc:** | **IMAGINATION GUEST SERVICES MANAGER; IMAGINATION CHIEF SECURITY; IMAGINATION CAPTAIN** |
| **Subject:** | **RE: IMPORTANT : Mr. Timothy Stordahl** |

Good evening to you,

I don't think is a good idea to ban them, it will create more complication, I spoke with CSO and two SO will monitor the area until casino closing time.

With Kindest Regards

Fabio Aceto
Staff Captain - Carnival Imagination
Carnival Cruise Line
Office 0341 | Cell 7801 | e: imstcapt@carnival.com

Page 2 Email from Assistant Chief Security Officer Nitin Gurung to Chief Security Officer in relation to Stordahl's disorderly behavior after Captain refused to ban him from the casino- *DATED Saturday May 21st, 2017 4:09AM*

**From:** IMAGINATION ASSISTANT CHIEF SECURITY OFFICER
**Sent:** Sunday, May 21, 2017 4:09 AM
**To:** IMAGINATION CHIEF SECURITY
**Subject:** Mr. Timothy Stordahl

Good morning Chief,

This morning at around 1:48am, Casino Manager Gianan called attention of Security who was monitoring Timothy Stordahl Age 58yrs of cabin M250 at casino and informed that Mr. Stordahl was using profanity and provoking the guests around in the casino. Mr. Stordahl also used "F" word towards Security when approached. Casino manager Gianan informed Mr. Stordahl that he is barred from Casino to which he reluctantly complied and was escorted out of the Casino.

Kind regards,

Nitin Gurung
Asst. Chief Security Officer,
Carnival Imagination Carnival Cruise Line
Office: 0784 | Cell: 7659  e: imachsec@carnival.com

24

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

Page 1 Email from Casino Manager Jennifer Gianan to management in relation to Stordahl's disorderly behavior- *DATED Saturday May 21st, 2017 6:46AM*

**IMAGINATION CHIEF SECURITY** ⎯⎯⎯⎯ ⎯⎯⎯⎯ *IM'2017 - 0'1*

| | |
|---|---|
| **From:** | IMAGINATION CASINO MANAGER |
| **Sent:** | Sunday, May 21, 2017 6:46 AM |
| **To:** | IMAGINATION STAFF CAPTAIN; IMAGINATION CHIEF SECURITY |
| **Cc:** | IMAGINATION CAPTAIN; IMAGINATION HOTEL DIRECTOR |
| **Subject:** | RE: Latest Update  Mr. Timothy Stordahl |

Good morning Fabio,

In addition to the below notes, the reason why I called the attention of the security was that when Mr. Stordahl came in the casino, he was already under the influence of alcohol.
And while he is playing, he started his nasty attitude by loudly commenting on everything. He was being reminded several times not to touch any topic that could offend other guests but
he said that he doesn't care as on this ship, he is the only quality guest we have and the rest are "cheap a,,holes bas...ds", he is the only one who can buy anyone with money.
Straight away I have to stop him as next to his tables are all mixed male clienteles who are also under the influence of alcohol and are loud. With his loud comments about everything from politics to races, in the long run these guys will be eventually involved the same like what had happened last night when the fight was instigated by him.

Kind Regards,

Jennifer Gianan,
Casino Manager | Carnival Imagination
*Global Casino Operations*
Office 0720 | Cell 7915 | e. imcasmngr@carnival.com

25

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

Page 7- Email from Chief of Security Simplicio D'Souza to management about two
alcohol related incidents.

IMAGINATION CHIEF SECURITY                          (IM 2017-077)

| | |
|---|---|
| From: | IMAGINATION CHIEF SECURITY |
| Sent: | Saturday, May 20, 2017 7:33 PM |
| To: | Butchko, John (CCL); Estopinan, Julio (CCL) |
| Cc: | BUELL, APRIL L (APRILL.BUELL@CBP.DHS.GOV); WILLIAMS, MICHAEL E (michael.e.williams@cbp.dhs.gov); JESUS.A.FLORES@cbp.dhs.gov; EDUARDO.B.HARO@cbp.dhs.gov; Kent.r.koike@cbp.dhs.gov; Peters, Maxwell (CCL); Sankar, Deborah (CCL); IMAGINATION CAPTAIN; IMAGINATION STAFF CAPTAIN; IMAGINATION HOTEL DIRECTOR; IMAGINATION SECURITY; IMAGINATION CHIEF SECURITY |
| Subject: | For Law Enforcement Two incidents IM2017-076 & IM2017-077 |

Good Evening ,

Kindly find two incidents below:

**Inappropriate Behavior: Incident Report IM2017-076.**
Complainant guest: Ms. Ugonwa Oyeka, Age 28 of cabin E240 requested assistance as Accused guest  Mr. Edwin Gooding Age 31 of cabin E156 was bothering her and tapped on her  buttocks at the lobby bar on deck-7 Fwd.
Complainant guest declined medical assistance when offered and requested to take Accused guest Mr. Gooding away from the bar.
Accused guest stated that he accidently tripped and touch the complainant & apologized. Accused guest was observed apparently under the influence of alcohol, as manifested by the smell of alcohol emanating from the breath. Accused guest alcohol privileges were revoked for the remainder of the cruise.

**Assault Non Serious Bodily Injury: Incident Report IM2017-077.**
Casino Manager  requested security assistance at Casino. Security noticed guest Ms. Elaine Barrera Age 39 of cabin M-60 and guest Ms. Charlene Major Age 52 of cabin U-60 were on the floor and were kicking each other. Security separated both the guests.
Ms. Barrera claimed that Ms. Major was racial and disrespectful and verbally threatened her father Mr. Timothy Stordahl Age 58 of cabin M-260, hence she stepped in and verbally confronted Ms. Major which led to a physical altercation between them. No visible bodily injury was noticed on both involved guests.
Ms. Barrera & Mr. Stordahl declined to press charges against Ms. Major & declined medical attention & further declined to provide a written statement. As requested Ms. Major was escorted to medical center and was seen by the Sr. Physician.
Ms. Major verbally claimed that  Mr.Stordahl passed some racial comment and his daughter Ms. Barrera stepped in and physically confronted Ms. Major. Security noticed minor bruise on Ms. Major  right thigh and left upper arm. Later Ms. Major accepted medical attention.

Regards.
Simplicio D'Souza
Chief Security Officer  Carnival Imagination
Carnival Cruise Line
Office: 075 | | Ext. 7627 | email: imchsec@carnival.com

Carnival ........

Charlene Major v. Carnival Corporation
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I:  May 20, 2017
March 8, 2019

## VII.   ANALYSIS, CONCLUSIONS and OPINIONS

It is irrelevant that a casino is not a bar. Rather, it functioned as a bar when it comped drinks and/or served alcoholic beverages to Stordahl and Barrera. Considering these factors were present while Stordahl and Barrerea were seated within the casino and being served/provided drinks, many of which were doubles it was more likely than not that an assault would occur within the bar.

Policies are fundamental for a server training program. Without responsible establishment policies and which to put server training into practice, the establishment's policies, servers and security staff indoctrination in responsible procedures are separated from supportive and objective standards on the job.[40] Defendant, Carnival failed to follow its own policies and/or create any mechanisms to ensure its crewmembers understood the policies and were able to implement them appropriately. The alcohol policy was insufficient and not properly followed regarding service to Stordahl and Barrera on May 20, 2017.

*19. Please describe in detail the methods the dealer (the one working at the table with Plaintiff and others involved in the subject altercation at the time of the subject incident) had for getting assistance, including, but not limited to: a button to push, a phone or radio, or other means.*

**Supplemental Answer:** *Casino dealers will immediately notify the Casino Supervisor on duty in the event that she needs Security's assistance. The Casino Supervisor will then notify Security using a shipboard cell phone and also notify the Casino Manager on duty.[41]*

*8. Compliance with Rules, Solicitation, Smoking, Drinking, Illegal Activity, Searches and Alcohol Policy*
*…*
*(e)Carnival has a "zero tolerance" policy toward any illegal activity or behavior by Guests or crew aboard. Guest agrees to comply with this policy and further acknowledges that it is Carnival's policy to report incidents of illegal activity or behavior to the appropriate law enforcement authorities.[42]*

---

[40] Scott, 2006
[41] Defendant's Notice of Serving First Supplemental Responses to Plaintiff's General Personal Injury Negligence Interrogatories to Defendant in a Maritime Passenger Case, Dated November 2, 2018, # 19
[42] NCL 19423-257

27

Charlene Major v. Carnival Corporation                                                 D/I: May 20, 2017
Expert Liability Report by Russell Kolins, BSSM, ICACP                                       March 8, 2019

## Responsible Alcohol Service

Defendant, Carnival Corporation ("Carnival") has an objective Responsible Service of Alcohol that is a combined effort that involves the coordination and cooperation of Bar Management, Bar Staff and our Security Service; Showing out guests and team members that we care and respect them; Ensuring the SAFETY and SECURITY of our guests and team members.[43] However, the action and/or inaction of Carnival's crew members were patently opposite of the actions that should have been taken to facilitate a combined effort of coordination and cooperation between Bar Management, Bar Staff and Security Services. Defendant, Carnival's actions and omissions didn't show its passengers, specifically, Plaintiff, Charlene Major that Defendant, Carnival cared and respected her. Rather, Carnival failed to create and/or facilitate a safe and secure environment for Plaintiff, Major.

Defendant Carnival had an obligation to provide proper and adequate training on the recognized and accepted industry standard regarding responsible alcohol service.

TIPS[44] and TAM are two of the most nationally recognized and accepted training standards regarding responsible alcohol management. They are the preeminent National programs. The following is a summary of each of those programs:

The TIPS ("Training for Intervention ProcedureS") program was developed by the Health Education Foundation of Washington, D.C., under the direction of Morris E. Chafetz, M.D., with the assistance of numerous other doctors, lawyers and experts in the alcohol and hospitality fields.  The TIPS for On-Premises program is designed to teach participants acceptable standards of practice for serving alcohol.

TIPS is the generally accepted standard in the retail liquor industry which should be followed by all owners, management and staff.[45]

Part of the TIPS training includes teaching behavioral cues, of which there are four. The behavioral cues indicate a level of intoxication of a patron.  There are four cues: beginning with the first sign of intoxication, being lower inhibitions.  Next is loss of judgment, symbolic of a patron dancing and singing, talking in a loud voice, and being overly friendly.  The staff is also taught that lack of judgment carries with it the idea that a patron believes that they can drive, when, in fact, they cannot and should not.  The next

---

[43] NCL-19423-492
[44] TIPS has become the  accepted training standard internationally in many other countries.
[45] Review of Carnival Module # 4 (Alcohol) appears to be modeled after the TIPS Program.

cue is slowed reaction, which is indicated by unfocused eyes and slurred speech, and the next cue of intoxication is staggering and fumbling.

TIPS also teaches intoxication rate factors, which help servers and security staff to assess how quickly someone is becoming intoxicated, presenting the idea of how rapidly that person's blood alcohol is rising. Intoxication Rate Factors are important issues in all recognized responsible alcohol management training programs. According to the TIPS Training Manual, these factors help a bartender/server assess how quickly a person will become intoxicated and can give the server an idea of how rapidly that person's BAC will rise. Intoxication rate factors are:

- Size:  Smaller people are typically affected more quickly by alcohol than larger people. However, larger people with a high percentage of body fat can become intoxicated faster;

- Gender:   Women are generally smaller, have more body fat, and tend to reach higher BAC's more quickly than men;

- Rate of Consumption:  Gulping drinks and ordering frequently will increase the amount of alcohol taken into the system;

- Strength of Drink:  Drinks of different types (e.g. straight, carbonated, or juice mixer) have varied effects based on their content;

- Drug Use:  Legal or illegal drugs can speed up the effects of alcohol and have an unpredictable outcome;

- Food Intake: A full stomach before or during drinking slows the absorption of alcohol into the bloodstream.

To understand blood-alcohol content (BAC), key points to understand are:

- The more alcohol a person consumes, the higher the BAC level will be;
- A guest's BAC level can be different each time he or she drinks;
- Intoxication rates factors affect how quickly the BAC level rises;
- The higher the BAC level, the more behavioral cues you are likely to see;
- Time is the only thing that can lower a person's BAC level.

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

Bartenders/servers are taught the guideline using a 150-pound male guest drinking for one hour on an empty stomach would likely have the following BAC levels:

- two drinks equal .05 BAC
- four drinks equal .10 BAC
- eight drinks equal .20 BAC
- twelve drinks equal .30 BAC

Trained owners, managers and servers learn that alcohol server standards calculate a standard drink measured as ½ ounce of ethyl alcohol. This is the equivalent of:

- 1.5 ounces of 80 proof spirits or
- 1 ounce of 100 proof spirits or
- 5 ounces of table wine or
- 12 ounces of beer.

Bartender/servers are trained to look for changes in people's behavior after a few drinks, which are called "*Behavioral Cues*." Usually, the more alcohol in the bloodstream, the more obvious the cues. Cues are exhibited in four areas:[46]

- <u>Inhibitions</u>:   Becoming talkative, displaying loud behavior or mood swings, or exhibiting a notable change in behavior can all indicate lowered inhibitions;

- <u>Judgment</u>:   Behaving inappropriately, using foul language, telling off-color jokes, annoying others, becoming overly friendly, or increasing the rate of drinking are signs of impaired judgment;

- <u>Reactions</u>:   Glassy, unfocused eyes, talking and moving very slowly, forgetting things, lighting more than one cigarette, losing one's train of thought, and slurred speech result from slowed reactions;

- <u>Coordination</u>:   Stumbling or swaying, dropping belongings, and having trouble picking up keys, change, or other items can indicate a loss of coordination.

Visible intoxication can occur at high or low BAC levels, depending on a person's reaction to alcohol. A person with a high tolerance to alcohol can exceed the legal BAC

---

[46] *TIPS Trainer's and Participant's Manuals*

30

driving limit before showing behavioral signs of visible intoxication, such as: loud speech, drinking alone, crude behavior, boasting, ordering doubles, drinking too fast, buying rounds, slurred speech, stumbling. The characteristics listed above are not exhaustive. Rather they are just a few of the many signs a person may display when becoming intoxicated. These signs, appearing independently, can often indicate the beginning stages of intoxication, while a combination of signs is generally a fair indication of visible intoxication.

TIPS teaches one very important fact- 'time' is the only factor that will lower BAC. The reason food, coffee, non-alcoholic drinks and the rest are offered to patrons by bar management and staff is simply to buy time, while giving an opportunity to buy management and staff time to decide how to deal with the present situation and resolve the problem with reasonable effort.[47]

Behavioral cues are but one way to gauge whether or not a person is visibly intoxicated or being served in such a manner that visible intoxication is inevitable. Some people do not demonstrate the typical behavioral cues, especially if he/she can "hold their liquor." This is why it is crucial to have a knowledge and appreciation for the number of drinks a person consumes, the type of drink consumed and the rate at which a person is consuming alcohol to have a proper gauge on whether or not the patron is or inevitably will become visibly intoxicated. It's contradictory and contrary to responsible alcohol training to not have some idea of the number of drinks a patron is consuming and the rate at which they are consuming alcoholic drinks.

A major way the licensee can exercise control over their liability is to offer managerial support by having an adequate number of employees to handle the volume of business, assisting the servers in monitoring customer alcohol consumption by selling drinks in measured amounts and making it a point to circulate among customers, especially on busy nights, to watch for signs of intoxication. An employee who is rushed may not be able to take the time necessary to effectively monitor a customer's alcohol consumption.

Establishment policies must cover more than alcohol service, *per se* for example, if hiring practices do not attempt to eliminate the possibility of irresponsible persons being hired, then that failure helps to raise liquor liability risk exposure. Failure to hold employees accountable for their irresponsible actions makes it more likely that they will repeat past mistakes.

---

[47] The TIPS (Training for Intervention Procedures) Program Training Manual

Supervision and education of managers, servers and security staff is an important function of the licensee. All servers, supervisors, managers and security staff act as an agent or servant of the licensee and it is the licensee who is the one responsible under the rules of agency.[48] Thus, it behooves the cautious and responsible licensee to institute policies which will protect the establishment, the licensee, the staff, and of utmost importance the customer from harm and liability.

Defendant, Carnival was aware that  "Many of guest accidents for the past few cruises are alcohol related. We should remind our Bar Department that is their responsibility not to over serve the intoxicated guests and to be mindful of who they are serving alcohol to", as discussed during the Crew Safety Focus Team Meeting dated January 18, 2017.[49] Further, "Alcohol consumption seemed to go higher these past cruises, we need to be vigilant."[50] Another notation stated," 3 day cruise a lot of guests are coming back from Ensenada intoxicated, and a lot of the alcohol restriction are placed. Security is doing a good job and also, all other crew/staff members should report any intoxicated guests to prevent any possible safety concerns.[51]

 In the minutes from the Accident Investigation Focus Team Meeting held on January 20, 2017 reflected, " *Staff Captain stated that most of the guest injuries were only minor, …. However, most of the accidents involved guests who were under apparently intoxicated. He emphasized all about the need to religiously implement/observe the responsible serving of alcohol to guests to avoid accident.*" Similarly, *the Ship Physician "stated that most of the accidents are minor injuries supposedly not within the CCL accident Reporting criteria. However, they were reported/documented in the Info ship because the guests were insisting to have their accident documented. He also stated that most of the guests involved in the accident were apparently under the influence of alcohol."*[52]

In June, 2016, an incident occurred wherein "a female guest who was apparently under the influence of alcohol lost her balance and fell off the bar stool and landed on the tiled floors, thus, sustained laceration on the back of the head.[53]

---

[48] Fay, 2007
[49] NCL-19423-637
[50] NCL-19423-645; 12/16/16
[51] NCL-19423-649
[52] NCL-19423-659
[53] NCL-10423-673

Similarly, in August of 2016, an "injured guest claimed that he was apparently intoxicated and was Dancing/shuffling at Deck-11 stbd side, he fell and hit his head on one of the deck chair, causing laceration to the back of his head,..."[54]

In October of 2016 there was an incident reported in the casino where the root cause is noted as, "Guest apparently under the influence of alcohol."[55] Further, the Assistant Casino Manager "*expressed his concern about the intoxicated guest in the casino and they tried their best to control their alcohol consumption with their alcohol program. He added that, the Bartenders/Bar servers should inform their supervisors if they observed any highly intoxicated guests*", as reflected in the Minutes of Accident Investigation Focus Team Meeting, dated November 14, 2016.[56] In January, 2017 there were other incidents reported that stated the root cause of the injury was "use of alcohol."[57]

Defendant, Carnival provided its crewmembers with minimal, inconsistent training. Further, it failed to follow the generally recognized and accepted terminology pursuant to the industry standard regarding responsible alcohol service, "visibly intoxicated" individual.

Defendant, Carnival was well aware of incidents occurring upon its vessel regarding passenger, Timothy Stordahl's inappropriate behavior:

- Stordahl complained that his drink "tasted like shit" and then became more aggressive and showed his middle finger to the bartender as he walked out of the area. ... The above mentioned guest [Stordahl] despite being and high-end player and despite us doing all efforts to accommodate his play at our tables, he became verbally aggressive swearing directly the casino staff and other guests playing with him at same table also showing obscene hand the signs to them. Guest was asked to cash out and leave and after he offered me the same "treatment" he left the casino.[58]

Stordahl became a known threat to Defendant Carnival, but despite this knowledge, Stordahl was permitted to return to the bars and/or the casino where his inappropriate behavior was condoned and he was furnished additional alcohol despite his

---

[54] NCL-19423-678
[55] NCL-19423-681
[56] NCL-19423-667
[57] NCL-19423-682-684
[58] NCL-19423-277; date created 1/13/15;1/14/15

Charlene Major v. Carnival Corporation
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: **May 20, 2017**
March 8, 2019

observed and known behavior of being aggressive, and abrasive with staff and other passengers.

According to Ralph Witherspoon, a leading industry authority, the goal of most bars, taverns, lounges and nightclubs is to provide a hospitable gathering place where patrons can have a good time, often by listening to or watching entertainment, and/or dancing, while purchasing and consuming the establishment's primary product — alcoholic beverages.[59] Every establishment's management has a general responsibility to use reasonable measures to provide a safe environment for its guests/customers (invitees), plus its employees, vendors, etc.[60] Reliable security to deter customer altercations, and to intervene if deterrence fails, is essential in the bar and nightclub industry. Tavern and nightclub management should first identify and assess the risks to their particular establishment, including any violence during the last few years at the club, and to a lesser extent the violent crime history in their immediate neighborhood and at any nearby bars or clubs. Management should then develop its security plan based on the type of customers they attract, plus the known or likely risks or problems. A key factor is knowing your guests/patrons - who are you attracting. However, written is always preferred, especially for training, continuity and documentation purposes.

Once the potential problems and risks are identified, countermeasures (policies, procedures, personnel and equipment) can be developed and personnel trained in their implementation. Owners and managers should take care to staff their establishment with responsible, trained employees in all positions. The security plan should be reviewed at least annually, or more often if problems are occurring, to determine whether any changes in the club's security plan are needed. The plan should also ensure adequate insurance coverage, specifically including alcohol related (Dram Shop) and assault and battery claims. Most importantly, all staff, especially security, should be trained (with the training documented) so that they understand the goals, policies and procedures of the establishment. Employees implement policies and procedures, with direction, guidance and supervision by management.[61]

Traditionally, the primary goal or purpose of security in any environment is to protect people and property.[62] Although specific duties or responsibilities may vary, the terms used most often to describe what security guards do include protection, enforcement, prevention, deterrence, assistance, and safety. This applies to a nuclear

---

[59] http://www.security-expert.org/nightclubs.htm
[60] http://www.security-expert.org/nightclubs.htm
[61] http://www.security-expert.org/nightclubs.htm
[62] (Berlonghi, 1996), P. 18

power plant, an office building, concert and any other special event. Each environment will have its unique circumstances. The true job of [security personnel] is to **deter** patrons from becoming unruly. They do so by their **visible** presence, alertness, situational awareness and interaction with guests and staff, and observing and assessing all that goes on within their sight and hearing, plus their verbal and/or physical intervention if necessary. Deterrence and prevention first! (Emphasis Added). [Security personnel] should have specific written policies and guidelines as to exactly what action(s) management wants them to take, or not take, and what authority management gives them in the absence of a manager. They should then be trained in those duties, and their individual training documented. Their duties should be limited to "security" type duties so that they do not become distracted, or find themselves elsewhere cleaning tables or floors, or performing other non-security duties such as "bar back", when a security problem arises. [63] "Visibility, availability, and an active duty routine are important to the perception of security as well as the reality."[64] "Security officers are the ones who have to see that people who come onto the property comply with the rules and regulations developed by management."[65]

Defendant Carnival's policies failed to provide guidance/instruction relating to complimentary drinks that are made available to VIP guest or Marker Players. There is no mention in this material regarding how to responsibly serve alcoholic beverages to VIP/ Marker Players or any guest in the casino. This is particularly relevant in this case because Major and witness, Tobias Tucker describe Stordahl as exhibiting textbook behavioral cues of visible intoxication and his prior and subsequent documented, rude, abrasive interaction with casino staff. Major recalled that during the morning hours approximately 3:00am she observed Stordahl stumble to the table in a drunken stupor[66], "*He fell, like knocked himself into - - he wasn't - - his balance was not of normal gait.*"[67] She further testified that Stordahl displayed signs of visible intoxication such as "*slurred speech, red eyes. He wasn't the same person that I saw earlier that day.*"[68] She also described Stordahl as obnoxious.[69] Tucker testified, "*The white gentleman and the white female seemed to be intoxicated. I didn't get as much from the black woman.*"[70] "*Their behavior and then the way the white gentleman was slurring his words when he was trying*

---

[63] http://www.security-expert.org/nightclubs.htm
[64] Fennelly, L.J., & Lombardi, J.H. (2005) Spotlight on security for real estate managers. Chicago: Institute of Real Estate Management (163-164)
[65] Fennelly, L.J., & Lombardi, J.H. (2005) Spotlight on security for real estate managers. Chicago: Institute of Real Estate Management (208)
[66] Major, 75-76
[67] Major, 76
[68] Major, 77
[69] Major, 78
[70] Tucker, 13

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: May 20, 2017
March 8, 2019

to provoke me to hit me, that told me he was drunk, which is why I told him I wouldn't assault him."[71]

These outward manifestations of behavioral cues are indicative of visible intoxication. Stordahl should have been monitored and assess for the various levels of intoxication and when observed to be in violation of Defendant Carnival's policies as described above, appropriate action should have been taken, appropriate managers should have been notified and alcoholic beverage service should have ceased to Stordahl. The fact that this was not done shows Defendant, Carnival's crewmembers inability to follow their own insufficient and inadequate policy regarding responsible alcohol service.

Responsible alcohol management and staff also subscribe to and follow industry standards and basic logic.[72] The _Study of Assaults in and Around Bars_ conducted by and published by the United States Department of Justice, Office of Community Oriented Services, found the following factors contributed to aggression and violence in bars:[73]

> Alcohol - Drinking alcohol is the most obvious factor
> contributing to aggression and violence in bars.

> Culture of Drinking - Cultures that are more accepting of
> intoxication as an excuse for antisocial or aggressive behavior, and
> relaxed the normal rules of society during drinking time,
> have higher levels of violence in and around bars.

> Type of Establishment – Certain types of bars, such as dance clubs
> and sport's bars have higher levels of reported violence. This
> especially applies to after-hours clubs where people go to consume
> more alcohol after the statutory regular places close.

> Continued Service to Drunken Patrons – This, of course,
> is in violation of state law and there is no excuse for lack
> of alcohol management.

> Crowding and Lack of Comfort – Poor ventilation, high noise levels, and
> lack of seating make bars uncomfortable. The discomfort increases the
> risks of aggression and violence. Crowding around the bar, in rest

---

[71] Tucker, 14
[72] This logic is applicable to cruise ships as well, which are essentially multiple floating bars.
[73] (Scott, 2006)

rooms, on dance floors, around pool tables, and near phones creates the risk of accidental bumming and irritation, which can also start fights.

Tolerance for Disorderly Conduct – If the bar staff tolerates profanity and other disorderly conduct, it suggests to patrons that the staff will tolerate aggression and violence as well.

Defendant, Carnival facilitated the aggression and violence that occurred within its casino. Stordahl was drinking alcoholic beverages on and before May 20, 2017.

## SECURITY

Security cannot be standardized in the hospitality industry.  Each venue must be individually evaluated as to their need for security officers.  The decision to institute a security officer program should be based on a variety of factors, which may include:

- Size and layout of the venue
- Location of the venue
- Potential for criminal acts
- Protection features of the venue
- An increase of crime at the venue or nearby businesses
- Special guests or events[74]

Defendant, Carnival Corporation had an obligation to provide a safe and enjoyable environment and provide security in a reasonable manner. Defendant took steps to hire security personnel but failed to take reasonable measures to ensure the persons hired were properly and adequately trained and executed their training properly when incidents occurred. Based on its own opinion, alcohol elevates violent situations.[75]

Simply stated, a vessel in international waters has the duty to provide reasonable care[76] to its passengers and crew and to provide a safe and comfortable place in which to operate. It has an obligation to take steps that are reasonable and prudent under all circumstances relevant to a passengers' and crews' safety. The obligation requires the owner/operator/management  that serves alcohol to exercise ordinary care to protect

---

[74] (Ralph Witherspoon, 2010)
[75] Carnival Security Manual 5.16 P. 111-112
[76] Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959)

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I: May 20, 2017
March 8, 2019

passengers from potential injury inflicted by individuals that the owner/operator/management could have reasonably foreseen might be present on the premises.

There are two types of security operations, one: proprietary security which is in-house or controlled entirely by the company establishing security for its operations; two: contract security services which are those operations provided by a professional security company that contracts its services to a business.[77] Staffing of proprietary security personnel is done entirely by the business while contract security personnel are hired, trained and supervised by the agency for which they work.[78] Defendant, Carnival hired proprietary guards, but failed to properly train, and supervise them with respect to the interplay between providing a safe environment for their passengers and assessing and monitoring passengers for signs of visible intoxication.

The entire extent of the training was one paragraph[79] and was not even cited in the yearly refresher training.[80] This same section, since the manual was written in 2003,[81] has only been revised two times. One time in 2005, to change the numbering of the section from 5.15[82] and the second time in 2009, to change Security Guard to Security Officer.[83] Since 2003, effectively, there was no change in these policies.

To protect the establishment, the staff, and the customers from harm and liability, a reasonable security program should be implemented. TEAM is an acronym for training, education, awareness and motivation. Each of these elements is aimed at producing a specific effect, which is an essential aspect of good security performance.

*Training*: Training enables people to perform their roles in the program with the needed quality by helping them gain needed skills and knowledge or have ready access to needed information. …Training produces skills, knowledge, and information needed for job performance.

*Education*: Education helps people gain an understanding of security program principles, policies, purposes, and rationales so they can and will make intelligent contributions to program quality. The educational component of the TEAM model

---

[77] Fischer & Green, 2004
[78] ASIS Protection of Assets Manual 2006,
[79] Carnival Security Manual 5.16 P. 111-112
[80] Carnival Security Manual 5.24 P. 129-130
[81] Carnival Security Manual P.20
[82] Carnival Security Manual P.17
[83] Carnival Security Manual P.13

38

goes one step beyond training to produce an understanding of the reasons behind our security requirements.

*Awareness*: Increasing awareness involves promoting the probability that people will consider security as they go about their work and personal lives by building a recognition of the reality and presence of the threat so countermeasures are recognized as necessary.

*Motivation*: Motivation involves working to raise the probability that people will make choices that are positive in terms of our security program and increase the amount of effort they devote to security performance.[84]

Carnival Corporation has a duty to conduct a risk assessment whenever there is a security related threat to a person or property. [85] The Carnival Security Manual addresses multiple threats faced on the ship from fires to illegal boarding, but also understands that alcohol increases violent actions.[86] Because of this, they have a basic detainment process where the disorderly person is confined to his/her cabin, which is a management decision.[87]

There was also no mention of security patrols or any type of security management or training in a gaming environment. There was also no schedule or mention of security staffing in the casino to assist with disorderly people, leaving the interaction with violent passengers to casino staff. Jennifer Gianam, the casino manager was advised to call for security next time Stordahl arrived, but there was no acknowledgment or discussion of any type addressing his disregard of and verbal assault on the casino manager with a ban from the casino.[88] Instead, Gianam permitted Stordahl to gamble without the suggested supervision of security. The gaming on the ship appears to be a big consideration when dealing with disorderly passengers.[89] Stordahl was a known threat due to his disorderly behavior and threatening other passengers including executive staff. [90] Gianam acknowledged this, as referenced in Defendant' Internal email(s).[91]

---

[84] Roper, Carl, et al. *Security Education, Awareness, and Training From Theory to Practice*. Elsvier Butterworth-Heinemann, 2006. (22-23)
[85] ASIS General Risk Assessment Guideline
[86] Carnival Security Manual 5.16 P. 111-112 .
[87] Carnival's Security Manual4.6 P. 44-47 & 4.10 P 59-63
[88] Defendants Internal Correspondence Friday May 19, 2017 852AM
[89] Defendants Internal Correspondence Friday May 19, 2017 123AM
[90] Defendants Internal Correspondence Friday May 19, 2017 123AM
[91] Defendants Internal Correspondence Sunday May 21, 2017 646AM

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

*52. Any and all training videos used to train crewmembers and which would have been in effect at any time within three years prior to the subject incident which would pertain to safety, security, altercations, service of alcohol to passengers and/or intoxicated passengers.*

*Supplemental response: None.[92]*

Defendant, Carnival understood that the purpose of security patrols is to PREVENT unwanted incidents and to make our guests feel safe and secure.[93] The "purpose of patrols is to maintain the peace and good order, and to protect the company, our guests, crew, property and their welfare." "Aggressively patrolling your designated areas minimizes opportunities for guests to become involved in incidents."[94] The "*main function is to ensure safety and security by maintaining high levels of visibility and interaction with guests.*"[95] "*Patrol provides a consistent and visible presence on the ships and contributes to a feeling of safety and security.*" "*Patrol Security Officers are easily accessible and are often able to deal with security concerns before an incident arises. Physical Security assessments should be conducted to decrease the likelihood of an incident. This method of patrol provides our security officers with the best possible opportunity for understanding what is happening onboard the ship.*" [96]

Q: You mentioned that security showed up after you had separated the white woman from the black woman, my client Charlene Major; is that correct?
A: Correct.[97]

Q: Was there any security in the area of the blackjack table at any point in time prior to the end of the physical part of the incident?
A: Not that I saw or noticed.[98]

Q: Did anyone at the table at any point in time ask for security?
A: Miss Majors did.[99]

---

[92] Defendant's Notice of Serving First Supplemental Responses to Plaintiff's November 2, 2018 Requests for Production, # 52
[93] NCL-19423-617
[94] NCL-19423-626
[95] NCL-19423-624
[96] NCL-19423-625
[97] Tucker, 18
[98] Tucker, 18
[99] Tucker, 18

Charlene Major v. Carnival Corporation                                    D/I: May 20, 2017
Expert Liability Report by Russell Kolins, BSSM, ICACP                        March 8, 2019

Q:    And did the dealer do anything?
A:    Not to my knowledge, no.[100]


Q:    Did you ever see any Carnival employees attempting to restrain the white
      man at any point in time?
A:    Not until the - - after the fight was done.[101]


*"I only saw after when I pulled her off her; and no, she [Major] wasn't kicking or
punching. She [Major] was more, like I said, lying on the ground defenseless."[102] "The
white woman and the black woman weren't really arguing. My concern was with the white
man, and that's why I didn't know that she was going to attack her, and it just happened
to fast that the white woman just attacked her."[103]*


Q:    How close was the white man to the white woman and my client, Miss
      Major, on the ground?
A:    We were all in close tight proximity.[104]


Q:    Was the white man in close proximity enough to physically strike Miss
      Major?
A:    Yes.[105]


Q:    Was there any Carnival personnel in the vicinity of the physical part of the
      fight?
A:    The dealer was there, but they weren't breaking up the fight.[106]


*"I don't know where the dealer was."[107]* The dealer was a woman.


Q:    Do you recall if there were any security officers in the vicinity of the fight,
      the physical part of the fight, during its duration?
A:    No. I don't recall any of them being there.[108]

---

[100] Tucker, 19
[101] Tucker, 19
[102] Tucker, 20
[103] Tucker, 20
[104] Tucker, 21
[105] Tucker, 21
[106] Tucker, 21
[107] Tucker, 21
[108] Tucker, 22

41

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I: May 20, 2017**
March 8, 2019

Upon review of the surveillance video, it is apparent that Major is not acting in any aggressive manner. A male's arm (believed to be Stordahl) observed gesturing in a threatening manner. Security personnel are not observed patrolling or stationed in the vicinity, despite the group of individuals playing at the blackjack table. Further, Security is not observed intervening or taking any proactive means to detect, deter or delay the assault upon Major. Security failed to follow Defendant Carnival's policy and failed to conform to the industry standards.

*There are no records indicating that Barrera was ever involved in any other altercations on board a Carnival ship before or after the alleged incident that is basis for this lawsuit. Barrera, along with Plaintiff, had her alcohol privileges restricted following the subject incident.*[109] *However, there are records indicating that Stordahl has been involved in altercations on other Carnival cruises both before and after the subject cruise. Stordahl had his sailing privileges revoked during the subject cruise, but not his alcohol privileges after the subject cruise.*

*There are no records indicating that Stordahl or Barrera have ever been involved in any other physical altercations on board a Carnival ship other than the alleged incident that is the basis of for this lawsuit. There are records indicating that Stordahl has been involved in verbal altercations on other Carnival cruises, ....*[110]

In sum, Carnival Corporation had a duty to ensure the safety of its passengers and its crew. Carnival had a serious lack of policy and training in alcohol awareness. Carnival also had no visible deterrence to stop unruly behavior, which was a routine occurrence. Carnival also encouraged the actions of Stordahl by allowing him the ability to gamble and over-consume alcoholic beverages due to his gaming status. It is well documented that the Casino Management advised the entire ship management team of Stordahl's racist comments and violence and incited full actions, which were witnessed and endured by staff and other passengers. Carnival Corporation and the management, even after he assaulted Charlene Major, allowed Stordahl to continue his activity. Due to the lack of Alcohol Awareness training, lack of security training and the willful ignorance of the Carnival Corporation to train their staff led to the severe injuries incurred by Charlene Major. The actions by Stordahl were not only predictable but also avoidable by Carnival Corporation, its management and staff.

---

[109] Defendant's Notice of Serving First Supplemental Responses to Plaintiff's November 2, 2018 Requests for Production, # 14
[110] Defendant's Notice of Serving First Supplemental Responses to Plaintiff's November 2, 2018 Requests for Production, # 62

For the reasons stated above, there is objective evidence that Defendant Carnival Corporation violated the industry standard of care that lead to the assault on Charlene Major. Based on my review of video surveillance, documents, materials, transcripts, and photographs identified in this report, as well as my knowledge and experience of security standards, theories and principles and my knowledge, experience, expertise and training in responsible alcohol management and bar and venue security, the Defendants collectively materially deviated from the applicable security and responsible alcohol service standards, and their own policies,  substantially breached their duty to undertake reasonable care to provide a safe place for guests and failed in protecting guests from a known threat. These breaches and failures were fundamental, outrageous and created an unsafe environment with circumstances that caused the injuries to Charlene Major which were both predictable and preventable.

All of my opinions are stated to a reasonable degree of professional certainty in my profession as an expert in responsible alcohol management and hospitality security. My Curriculum Vitae is attached with this report.

Sincerely,

Russell Kolins, CCDI, BSSM, ICACP

RDK/wh

Charlene Major v. Carnival Corporation                                    **D/I: May 20, 2017**
Expert Liability Report by Russell Kolins, BSSM, ICACP                         March 8, 2019

## REFERENCES[111]

Chafetz. (current). *Training for Intervention Procedures (TIPS).* Arlington: Health
    Communications, Inc.
Clifton, D. (2012). *Hospitality Security, Managing Today's Hotel Lodging, Entertainment
    and Tourism Environment.* Boca Raton: CRC Press.
Commission, S. a. (2003). *General Security Risk Assessment Guideline.* Alexandria:
    ASIS International.
Dubowski, D. (2006;2012). Stages of Acute Alcoholic Influence and Intoxication. In
    *Garriott's* (p. 2.2). Lawyers and Jusges Publishing Co., Inc.
Fay, J. J. (2007). *Encyclopedia of Security Management.* Burlington: Elsevier.
Fischer, R. J., & Green, G. (2004). *Introduction to Security.* New York: Elsevier,
    Butterworth, Heinemann.
Garriott. (2008 and 2012). *Garriott's Medicolegal Aspects of Alcohol.* New York:
    Lawyers and Judges Publishing Company.
IAPSC. (CURRENT). FORENSIC METHODOLOGY. IAPSC.
IFPO. (2010). *The Professional Protection Officer Practical Security Strategies.* Boston:
    Elesvier.
Kilby, J., Fox, J., & Lucas, A. (2005). *CAsino Operations Management.* Hoboken: John
    C. Wiley & Sons.
*Protection Officer Training Manual.* (2003). Boston: International Foundation for
    Protection Officers.
Ralph Witherspoon, C. (2010, January). Security in Nightclubs and Bars. *Security
    Management Magazine.*
Scott, M. S. (2006). Assaults in and Around Bars. *Study.* Washington, DC: DOJ.
Talbot, J., & Jakeman, M. (2009). *Security Risk Management; Body of Knowledge.*
    Hoboken: Wiley.
*Tecniques of Alcohol Management.* (1985). Lansing: State of Michigan, Dept of
    Alcoholic Beverage Control.
Zajic, A. W., & Boss, D. J. (2011). *Casino Security and Gaming Surveillance.* Boca
    Raton: CRC Press.

---

[111] The above references have been reviewed. Not all are referenced in this report, but I reserve the right to refer to them in preparation for testimony or possible supplemental report.

## APPENDIX "A"

## PERSONS IDENTIFIED IN DISCOVERY

- Plaintiff/Victim:
  - Charlene Major
- Defendant:
  - Timothy Stordahl
  - Elaine Barrera
- Carnival Corporation Celebration Staff
  - Fabio Aceto          Staff Captain
  - Simplicio D'Souza     Chief Security Officer
  - Nitin Gurung          Assistant Chief Security Officer
  - Jennifer Gianan       Casino Manager
  - Guna Chellam          Hotel Director

## APPENDIX "B"

## METHODOLOGY

My analysis is consistent with the best practices and forensic methodology by ASIS International, *Protection of Assets Manual (POA)* and the International Association of Professional Security Consultants (IAPSC).

ASIS International is the preeminent worldwide Professional Security organization, consisting of vetted qualified members in every discipline of security. The Protection of Assets Manual is recognized in the security industry as the "*Bible*" of security. Its contents are comprised of accepted industry standards and accepted best practices. It also contains sections of published books and other literature for the education and advancement of all principles and disciplines of security. ASIS International also has certified many Councils that are comprised of only qualified and accepted leaders in their respective field of expertise. Membership is limited for each Council. Councils are charged with the responsibility of continuous monitoring of their respective objectives and developing recommendations for the Standards and Best Practices Commission for the advancement of those standards. I serve as the Liaison to the Commission.

I have been an active member of the Hospitality, Entertainment and Tourism Security Council on which I currently serve as Chairman (2017, 2018 and 2019). I also Chair a Committee on the Crime Prevention and Loss Prevention Council. I earned a Bachelor of Science Degree in Security Management.

The International Association of Professional Security Consultants (IAPSC) is the preeminent organization restricted to recognized qualified professionals in their respective security disciplines.

Furthermore, the forensic methodology used to arrive at my opinions include the review of the aforementioned materials, my knowledge and experience obtained through studies of theories and applications of those theories, as well as research and review of qualified written materials describing the accepted practices and standards of security principles and benchmarking practices and is in accordance with IAPSC Forensic Methodology, a copy of which manual is attached with this report.

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

## APPENDIX "C"

## REVIEWED MATERIALS

1. Complaint and Demand for Jury Trial
2. Carnival Corporation's Answer and Affirmative Defenses to Plaintiff's Complaint
3. Plaintiff's Responses to Defendant's First Interrogatories
4. Defendant's Notice of Serving Responses to Plaintiff's Interrogatories, dated November 2, 2018:
   a. Responses to Plaintiff's General Personal Injury Negligence Interrogatories to Defendant in a Maritime Passenger Case dated November 2, 2018
5. Defendant's Notice of Serving Responses to Plaintiff's Requests for Production, dated November 2, 2018
6. Carnival Document Production (17 pp):
   a. Guest Management Portal (1)
   b. Movement Report (6)
   c. Invoice (7)
   d. Comment Details for State Room (16)
7. Carnival Cruise Lines Ship Security Manual
8. Deck Plans
9. Carnival's Privilege Log
10. Defendant's Internal Correspondence
11. Guest Information for:
    a. Timothy Stordahl
    b. Elaine Barrera
    c. Mark Sivert
    d. Charlene Major
12. Charlene Major's Medical Records
13. Photographs of Charlene Major's
14. Handwritten Statement by Charlene Major to Carnival
15. Video Surveillance
16. Depositions of:
    a. Charlene Major (2/7/2019) with Exhibits:
       i. Photographs
       ii. Statement
    b. Monica Petisco Volume I (2/26/2019) with Exhibits:
       i. Notice of Deposition
       ii. Email from Victor Pelaez, Esquire

47

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

D/I:  **May 20, 2017**
March 8, 2019

    iii.  Complaint and Demand for Trial
    iv.  Payment Document for Medical Treatment
    v.  Email from Imagination Chief Security
    vi.  Defendant's Answer and Affirmative Defenses
    vii.  Email from Jennifer Gianan
    viii.  Summary of Drink Purchases
    ix.  Carnival Documentation of Stordahl Drink Purchases
    x.  Carnival Documentation of Barrera Drink Purchases
    xi.  Shipboard Medical Records
    xii.  Defendant's Answers to Plaintiff's Interrogatories
    xiii.  Statement by Plaintiff
    xiv.  iCare Review
    xv.  GSAR Letter dated 5/21/17
    xvi.  Cruising History for Stordahl
    xvii.  Discovery Documents provided by Carnival
    xviii.  Defendant's Response to Plaintiff's Supplemental  RFP
    xix.  Defendant's Response to Plaintiff's RFP dated 11/2/18
    xx.  Defendant's First Supplemental Response to 11/2/18
    xxi.  Crew Witness and Status List
    xxii.  Defendant's Second Supplemental Response to 11/2/18 RFP
    xxiii.  Booking History
    xxiv.  Defendant's First Supplemental Response to Interrogatories
    xxv.  Drink Purchase Log for Plaintiff
    xxvi.  Sail & Sign Log for Plaintiff
  c.  Monica Petisco Volume II (2/26/2019)
  d.  Elaine Barrera
  e.  Tobias Tucker with Exhibits:
    i.  Photographs

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

## APPENDIX "D"

## QUALIFICATIONS

I am a practicing Licensed Private Detective and Security Consultant/Practitioner. I celebrated my 49th year in private practice in August, 2018. I am a Board Certified Criminal Defense Investigator and hold a specialized Bachelor of Science Degree in Security Management. I am Chairman of the ASIS International Hospitality, Entertainment and Tourism Council. I have extensive experience in the hospitality industry both as an investigator for the insurance industry and for plaintiffs' Counsel as well as a consultant to attorneys for litigation support. I am a security consultant to retail commercial venues.

I am an active member of the International Association of Professional Security Consultants (IAPSC: the preeminent organization dedicated to the advancement of qualified Security Consultants); and ASIS International (International leading organization for security leadership and standards). My experience, education and training include, but are not limited to the following:

- Bachelor of Science Degree in Security Management;
- Active Member and Subject Matter lecturer ASIS International;
- Active Member IAPSC;
- Elected to the Crime Prevention and Loss Prevention Council (ASIS International) and serve as a Director and Chairman of the Membership Committee;
- Elected Chairman for terms (2017, 2018 and 2019) to Hospitality, Entertainment and Tourism Council (ASIS International);
- Review and analysis of the aforementioned documents (I);
- Certified Trained Crowd Control Manager (International Association of Venue Managers);
- Certified Instructor: Training for Intervention ProcedureS (TIPS);
- Certified Instructor: Techniques of Alcohol Management (TAM);
- Certified Instructor: Bar Security Management;
- Training and Certification by National Incident Management System (NIMS, FEMA);
- Certified in Homeland Security;
- My knowledge and experience obtained through theory and the practice and applications of those theories learned and exercised in over forty-nine years as a professional Licensed Investigator and Security and Liquor Liability Consultant;
- Continuing education in Security Management (teacher & student);
- Continuing education Responsible Alcohol Management (teacher & student);

49

- Review of written materials and accepted practices and standards of accepted security principles;
- My experience as a Licensed Investigator and Security Consultant involving security issues, premises liability and premises security;
- My experience in the United States Marine Corps where I trained and exercised in Counter-Intelligence;
- Multi-state court qualified Security; Crowd Control; Liquor Liability; and Premises Liability Expert.

TIPS and TAM are the two nationally accepted responsible alcohol management programs which have been the benchmark for development of similar programs such as RAMP. These programs specifically train licensees, managers, servers, security and all other staff the standards and duty of care that apply to the retail liquor hospitality industry. TIPS and RAMP also teach hands-on practice of how to recognize persons who are becoming or are intoxicated; how to handle situations in retail liquor service establishments as well as reasonable steps and efforts to provide a safe and comfortable environment.

I have also been trained by the United States Marine Corp's Staff NCO Club Management. I have been employed in the tavern business and been the owner of a major night club in which I was responsible for the day to day training of management, servers and security staff. I also served as an officer/director of a major tavern owners' association. I have instructed numerous organizations on the proper techniques of alcohol management and security within the liquor licensed retail business and non-alcohol event enterprises.

Additionally, I lectured at the Indiana Association of Professional Investigators Annual Training Seminar on Liquor Liability and Bar Security. I was also invited to speak about Security in the Hospitality Industry at the Crime Prevention Through Environmental Design (CPTED) International Conference and Seminar in Calgary, Alberta, Canada. (2010). I co-presented a seminar on Bar Security, Standards and Duty of Care at the Nightclub, Bar and Restaurant Annual Conference and World Expo in Las Vegas in 2012. I was the featured presenter at the annual PALI Conference in October, 2012, and again in 2018 on Security and Safety in the Hospitality Industry.

I lectured at the New Jersey Bar Association Annual day long Negligent Security CLE in June 2013 and taught a day long combined CEU and CLE class on Liquor Liability and Hospitality Security in September at the annual FAPI Conference in Florida in 2013 and 2014. I was again invited to and accepted to teach a class on ("*Closing Time: The*

*Social Mentality*") at the 2014 Nightclub, Bar and Restaurant Conference and World Expo in Las Vegas (March 23-26, 2014). I also lectured at the 2014 Intellenet World Conference in San Juan, Puerto Rico, in April, 2014 on *"Hospitality Security and Its Relationship to Alcohol for Litigation Support."*

In addition to my other work and studies, I specialized in the insurance defense industry during the first two decades of my Practice during which I received extensive training and education in the fields of Risk Management; Risk Assessments; Premises Liability; Security Inspections and Civil Liability. I was elected for three terms as President of the Philadelphia/Bucks County Claims Association and was an active participant in the educational program planning at the annual Pennsylvania State Claims Association Conferences for several years.

I received formal specialized education in the field of Security Management and Security Principles and earned a Bachelor of Science Degree in Security Management as well as numerous certificates after attending hundreds of seminars in the field of security and liquor liability. I was trained by the International Association of Venue Managers, Inc. (IAVM) as a Certified Trained Crowd Manager (CTCM), which included the safe handling of persons in parking lots.

I was also qualified and accepted to study at the Indiana University, School of Criminal Justice, Borkenstein Institute on Alcohol Testing and Analysis for Litigation, a 60 hour educational program which I successfully completed on May 25, 2014, in Bloomington, Indiana.

I am a member of the National Crime Prevention Council and have been certified in both Homeland Security and The International Association of Crime Prevention Through Environmental Design (CPTED). I am a long time member of ASIS and have instructed classes on Legal Aspects of Security and Principles of Security to members of the Greater Philadelphia and the South Jersey regional chapters of ASIS.

I was also recruited in 2010 as a Special Advisor to the Philadelphia City Council to assist with drafting a bill that would require Security Personnel employed in a retail liquor service establishment to be formally trained and certified in order to qualify for employment. I testified before the City Council Sub-Committee on Safety and Security. The bill was passed by Council and signed into law by Mayor Nutter in December, 2011.

**Charlene Major v. Carnival Corporation**
Expert Liability Report by Russell Kolins, BSSM, ICACP

**D/I:  May 20, 2017**
March 8, 2019

I was a Special Advisor to the Commanding Officer of the South Street Entertainment District for over one year to help plan and develop a safer late night entertainment district.

I was then recruited to consult with the City Managing Director's Office to develop a formal comprehensive training program as well as developing the criteria for certifying trainers to teach the curriculum. The course consists of 16 hours that includes Responsible Alcohol Management, The Role of the Security Staff, Legal Aspects, First Aid, Identification, Handling Situations, Non-Lethal Defensive training, and verbal judo.

I consulted the City of Pittsburgh, Mayor's Office, City Council, Police Department and stakeholders for the purpose of conducting a study of the City's 7 Entertainment Districts and making recommendations on how to make them safer.

# Russell Kolins, BSSM

## KOLINS SECURITY GROUP

1528 Walnut Street, Suite 600, Philadelphia, PA 19102

(215) 735-2131

www.KolinsSecurityGroup.com

Russ Kolins holds a Bachelor of Science Degree in Security Management. After extensive intelligence training and service in Viet Nam, while serving in the Marine Corps, Kolins began a rewarding career in private practice as a licensed investigator. His talents were recognized by the insurance industry that trained him extensively in the fields of Risk Management, Risk Assessments, Premises Liability, Security Inspections and Civil Liability.

Kolins was retained independently as a Security Consultant by the owner-operators of a chain of motels on the East coast to conduct Risk Assessments, Design Safety and Security Policies as well as train personnel on Security Procedures. Kolins, trained and experienced in the hospitality industry, became the owner-operator of a bar and nightclub in New Jersey where he was responsible for writing Policies and Procedures and training management, servers and security staff. Kolins became a certified instructor in TAM (Techniques of Alcohol Management) and TIPS (Training for Intervention Procedures), two nationally recognized Responsible Alcohol Management programs. Kolins is also a graduate of Indiana University's Borkenstein Justice Institute for Alcohol Testing and Analysis for Litigation, as well as Criminal Justice and Legal Affairs Departments on Alcohol Testing and Effects.

Both before and after earning his degree, Kolins trained and earned numerous certificates and certifications in Security, Liquor Liability, Premises Liability and Crowd Control. He is dedicated and active in ASIS International, International Association of Venue Managers, International Association of Professional Security Consultants and International Association for Healthcare Security and Safety where he exchanges knowledge and experience with peers. Kolins has served on the prestigious ASIS International Hospitality, Entertainment and Tourism Council for 8 years and was elected Chairman for the 2017 term. He has served on the ASIS International Crime and Loss Prevention Council for 4 years and was elected to the Board for the 2016 and 2017 terms.

Kolins is recognized as an industry teacher, trainer, educator and consultant to some of the largest Nightclub Entertainment Venues, Country Clubs, Resorts and Hotel/Motel businesses. He is often called to lecture to his peers and has been a mentor to veterans and law enforcement officers desiring to make the transition from the public to the private sector. Kolins has consulted with scores of plaintiff and defense lawyers as either a consulting expert or litigation expert. He has been Court Qualified as an Expert Witness for Negligent Security, Liquor Liability, Premises Liability, Bar/Nightclub Operations, Excessive Force, Hospitality and Security Management. This designation was earned from decades of education, training and experience.

In 2016, Kolins expanded Kolins Security Group to become a comprehensive team of nine nationally-recognized, court-certified security experts. Our vast wealth of practical, hands on experience, depth of knowledge and skill, extensive education and training has helped numerous clients find the truth and achieve positive legal results. For more information and to meet our group, please visit www.KolinsSecurityGroup.com.

October, 2018

# Curriculum Vitae

## Russell Kolins, BSSM, ICACP, BAI

1528 Walnut Street
Suite 600
Philadelphia, PA 19102
215-852-0017

---

### PROFESSIONAL EXPERIENCE

2015 – Present      Kolins Security Group (Division of Russell Kolins Associates)

2012 – Present      C.L.A.S.S. (Co-founder) Certified Legal Alcohol Security System

1982 – 1992      Owner/operator of tavern/night club in New Jersey

Russell Kolins Associates, Philadelphia, Pennsylvania (1969 – Present)
- Crime/Loss Prevention Consultant*
- Security Consultant, including: *
  - Risk Assessment;
  - Vulnerability Assessment;
  - Threat Assessment
- Certified in Crime Prevention Through Environmental Design*
- Facility Security Design
- Risk Management Consultant*
- Liquor (Dram Shop) Liability Consultant*
- Premises Liability Consultant*
- Certified Trained Crowd Control Manager*
- Expert Witness and Forensic Investigator in Liquor; Premises and Negligent Security Liability Cases*
- Bar/Nightclub Operations Consultant*
- Hospitality Industry Consultant*
- Board Certified Criminal Defense Investigator (CCDI)*
- Board Accredited Investigator (BAI)*

- * Available as Subject Matter Speaker and Instructor.

October, 2018

## EDUCATION

**2008   Southwestern College, Winfield, KS**                          **B.S., Security Management**

| | |
|---|---|
| 2018 | ASIS International:  Security Leadership Conference |
| 2017 | University of Louisville Southern Police Institute, Updated Training Crime Prevention Through Environmental Design |
| 2017 | Cincinnati (Public/Safety/Law Enforcement Academy) Liberty Township: Advanced De-escalation Training "Read-React-Respond" |
| 2014 | Indiana University, Borkenstein Institute for Alcohol Testing and Analysis for Litigation, Bloomington, Indiana |
| 2014 | Board Accredited Investigator (BAI) |
| 2013 | Connecticut State Security Officer Certification |
| 2011 | New Jersey State Police Security Officer (SORA) (Recertification every two years) |
| 2011 | IAVM Certified Crowd Control Manager |
| 2010 | Calibre Press/Police One (Street Survival Training Certificate) |
| 2008 | Southwestern College (BS Degree in Security Management) |
| 2008 | Certification Homeland Security |
| 2007 | Board Certified Criminal Defense Investigator |
| 2006 | High Rise Security Management and Fire Safety and Business Continuity (ASIS) |
| 2005 | Certification in National Emergency Incident Management (GOV-SEC; Wash., D.C.) |
| 2004 | Certification Commercial TIPS Trainer2000 Certification at University of Pennsylvania (College) TIPS Trainer (Recertification annually) |
| 1985 | Certification as Trainer Techniques in Alcohol Management (TAM) |
| 1969-1980 | Temple University, Philadelphia, PA Coursework in Criminal Justice and Psychology |
| 1964-1966 | Temple University, Philadelphia, PA Coursework in Criminal Justice and Psychology |
| 1973 | Decktor Counter-Intelligence and Security, Alexandria, VA |
| 1966-1967 | Various US Gov't Intelligence and Security Schools |

## TEACHING

ASIS International                          Subject Matter Lecturer

City of Philadelphia, ongoing              Certified Trainer Bar/Nightclub Security

Temple University, ongoing                 Frequent Guest Lecturer White Collar Crime; Video and Surveillance

2

<u>October, 2018</u>

| | |
|---|---|
| Beasley School of Law (Temple U.), ongoing | Third year Law Class Innocence Project |
| TIPS Program, ongoing | (Certified Trainer: Alcohol Management) |
| TAM Program | (Certified Trainer: Alcohol Management) |
| Franklin Institute, 1977-1980 | Forensic Science |

## **LICENSES**

Private Detective:   Pennsylvania, 1969 – present

## **MULTI-STATE COURT QUALIFIED EXPERT**

Nightclub/Bar/Restaurant Security

Liquor (Dram Shop) Liability Hospitality

Bar Operations

Hotel Security

Premises Liability (Premises & Parking Lot)

Shopping Center/Mall Security

Negligent Security (Premises & Parking Lot)

Use of Force; Excessive Force

Crowd Control

Negligent Hiring and Negligent Retention

Protocols for Video Surveillance Operations

Criminal Defense Forensic Investigation

3

October, 2018

## PROFESSIONAL MEMBERSHIPS

- Crime and Loss Prevention Council (ASIS) Elected 2014
- Hospitality, Entertainment and Tourism Security Council (ASIS: HEaT) Elected 2012
- International Association of Professional Security Consultants (IAPSC), current
- ASIS International (Council Chairman), current
- The Society of Industrial Security Professionals, current
- National Foundation for Protection Officers, current
- American Hotel and Lodging Association, current
- International Association for Healthcare Security and Safety (IAHSS), current
- International Association of Venue Managers (IAVM), current
- Loss Prevention Foundation, current
- National Association of Convenience Stores, current
- Illuminating Engineering Society (IES), current
- Intellenet International, current
- NCS4 The National Center for Spectator Sports Safety and Security (University of Southern Mississippi), current
- National Fire Protection Association (NFPA), current
- National Crime Prevention Council, current
- National Council of Investigators and Security Specialists (NCISS), current
- South Jersey Chapter of ASIS, current
- Greater Philadelphia Chapter of ASIS, current
- Association of Former Intelligence Officers, current
- Association of Certified Fraud Examiners, current
- The Society of Human Resource Management (SHRM), current
- International CPTED Association (Crime Prevention Through Environmental Design), current
- National Crime Victims Bar Association, current
- Pennsylvania Defense Institute (Charter), current
- Philadelphia/Bucks County Claims Association (former President elected to 3 terms), current
- United States Association of Professional Investigators (USAPI) (Charter Member), current
- Certified Defense Investigators Training Academy, current
- National Association of Sport's Officials, current
- NCAA Sports Officials, current
- Law Enforcement Square Club, current
- International Association Chiefs of Police (1984)

4

October, 2018

## **BOARD MEMBERSHIPS**

- Board Accredited Investigators, current
- Society for Professional Development (SPD), current
- Crime and Loss Prevention Council (ASIS;CPLP) Membership-Chairman (2015, 2016, 2017, 2018)
- Hospitality Entertainment and Tourism Council (ASIS:HEaT):
  - o Chairman 2017, 2018
  - o Vice-Chairman (2014, 2015, 2016)
  - o Secretary (2013)
- Pennsylvania Special Olympics (Board Member 1995-2007)
- Pennsylvania Boxing Scholarship Foundation (Board Member,1994-1998)
- Board of Directors, Camden County Tavern Owners' Association (1985-1990)
- Philadelphia/Bucks County Claims Association (Past President elected to 3 terms) 1970-1980

## **SPECIAL APPOINTMENTS**

2014 – 2018      ASIS Standards & Guidelines Commission Liaison

2013 - 2018      ASIS International Conference Moderator

2012 - 2018      ASIS International, Appointed to Review and Selection Committee for Educational Sessions at Annual International Conference

2011 – Present      Responsible Hospitality Institute (RHI) Special Advisor to City of Pittsburgh's Entertainment Districts for a Safer Environment through Security/Community Policing Partnership and Responsible Alcohol Management

2011 – Present      Security Consultant to Philadelphia City Council and City Managing Director's Office

2010 – 2013      Special Security Consultant to Philadelphia Police - Commanding Officer of the South Street Business and Entertainment District

5

October, 2018

## MISCELLANEOUS

### *Character in the following books or made-for-TV films*

Clowns to the Left of Me, Jokers to the Right American Life in Columns
Engaged to Murder
Blind Faith
Echoes in the Darkness
Best Investigated Cases
Not Guilty (Student Film Documentary 1st place winner at Cannes)
Bykofsky's Little Black Book of Best in Business
Joseph Wambaugh: The Jay Smith Case
Busted

## TELEVISION and RADIO

CNN:  Michael Smerconish Show
(Resident Expert Investigator/Security Consultant)
WPHT 1210-Talk Radio Michael Smerconish Show
Appear as Security Consultant to ESPN 950 Radio
Investigator/Security Consultant to local NBC affiliate
Phil Donahue Show
The Tonight Show
Sally Jesse Raphael Show
Numerous Local and Regional Television News and Talk Shows

## PRESENTATIONS

| Title and Association | Subject Material |
|---|---|
| ASIS International GSX Annual Conference Las Vegas, NV (2018) | Policies and Procedures for Proprietary and Contract Security Personnel |
| ASIS International Philadelphia Chapter (2018) | Policies and Procedures for Proprietary and Contract Security Personnel |
| Intellenet International Annual Conference (Aruba, 2018) | Crime/Terror Attack Prevention Through Environmental Design |
| Curacao Safety and Security Conference (Willemstad, Curacao, 2018) | Keynote Speaker:  Crime Prevention Techniques |

6

October, 2018

| | |
|---|---|
| ASIS International Annual Conference<br>Chapter 79 Central, PA (2017) | Session 1:  CCTV; Body Worn Cameras<br>Proper Policies and Procedures |
| | Session 2:  Panel Discussion – Legal<br>Aspects of Audio and Video Recording |
| Responsible Hospitality Institute (RHI)<br>International Conference<br>Austin, TX (2017) | Use of Video Surveillance and Body Cams |
| ASIS International Annual Conference<br>Orlando, FL (2016) | Video Surveillance and Use of Body Cams<br>in the Private Sector |
| ASIS International Annual Conference<br>Anaheim, CA (2015) | Security Management |
| Intellenet International Annual<br>Conference (April 2015) | Safety and Security in Hotels, Casinos and<br>Street Crime |
| Associations One National Annual<br>Conference; Indianapolis, IN (March, 2015) | Preparing Negligent Security Cases for<br>Litigation |
| Florida FAPI Annual Conference<br>(2014) | Preparing for Plaintiff and Defense Security<br>Litigation (CEU & CLE) |
| Nightclub Bar & Restaurant Nat'l Conference<br>(Las Vegas 2014) | Closing Time!  Managing Social Behavior |
| ASIS International Annual Conference<br>Atlanta, GA (2014) | Security Management in Hospitality<br>Industry |
| Intellenet International Annual<br>Conference; San Juan, PR (2014) | Elements You Need to Know in<br>Cases Involving Inadequate Security<br>and Alcohol |
| Florida FAPI Annual Conference<br>(2013) | Legal Aspects of Security for Investigators,<br>Security Consultants and Lawyers<br>(CEU & CLE) |
| New Jersey Bar Association ICLE | Negligent Security |
| Intellenet International Annual<br>Conference; Philadelphia, PA (2013) | Keynote Dinner Speaker |

7

<u>October, 2018</u>

| | |
|---|---|
| ASIS (Greater Philadelphia) | Current Trends in Security and Responsible Alcohol Management in Hospitality Venues |
| ASIS (South Jersey) | Current Trends in Security and Responsible Alcohol Management in Hospitality Venues |
| ASIS (North Jersey/New York) | Current Trends in Security and Responsible Alcohol Management in Hospitality Venues |
| City of Pittsburgh (Mayor; City Council; Chief of Police; Community Leaders; Venues and Districts) | Establishing Safer Entertainment Venues |
| Pennsylvania Association of Licensed Investigators | Liquor Liability, Bar Security, Premises Liability |
| Philadelphia Pennsylvania City Council | Special Security Expert Advisor |
| Nightclub Bar & Restaurant Nat'l Conference; Las Vegas, NV (2011) | Security/Alcohol Service (Standards & Duty of Care) |
| Numerous Tavern Owners Associations | Alcohol Management/Security Issues |
| Lions and Rotary Clubs | Safety and Security in the Workplace |
| Delaware Valley Association of Chiefs of Police | The World of the Investigator and Security Consultant Transition from Police Department to Private Industry |
| Camden County College | Criminal Defense Investigation |
| Temple University Law School | Lawyer/Client Relationship |
| Pennsylvania State University Georgetown University Law School | Preparation and Trial of a Fraud Arson Case Investigation of a RICO case |
| Pennsylvania Ethical Society Private Industry and Various Schools | Security in High Rise Buildings Various Investigative and Security topics |
| Responsible Hospitality Institute | Providing a Safe Environment Through Security in the Hospitality Industry. |
| Indiana Association of Private Investigators | Liquor Liability and Bar Security Investigations |

8

October, 2018

| | |
|---|---|
| Alcohol Responsibility Conference | Panel on Liquor Liability and Tavern Security |
| National Assn Parents of Murdered Children | Security for Children (Duty and Standard of Care) |

## MILITARY

1967 – 1969    Viet Nam:  3rd Force Recon, attached to 3rd Counter-Intelligence Team.
USMC 2nd Force Recon (US)/Counter-Intelligence

1966 – 1969    United States Marine Corps

1966 – 1967    Honor graduate from Intelligence Schools and Security Training
Fort Holibird, MD; Little Creek, VA; Augusta, GA
U.S.M.C. Service Club Management, Camp LeJeune, NC

## AWARDS

- Navy Achievement Medal:  For outstanding achievement and superior performance while serving as an Intelligence Agent/Recon Marine in RVN, 1969
- Navy Commendation Medal:  For heroic achievement during Intelligence Operations in RVN (20 March 1969)
- Recognition for Contribution as Keynote Speaker at Annual International Intellenet Conference (2013)
- Meritorious Achievement Award:   Dept. of Veterans Affairs, State of New Jersey, 1995
- Pennsylvania Claims Association:  Man of the Year, 1977 & 1980
- Philadelphia/Bucks County Claims Association: Man of the Year, 1978
- Recognition by The Academy of Criminology, 2002
- Delaware Valley Association of Chiefs of Police: Outstanding Service in field of Investigation, 1995
- Chapel of the Four Chaplains:  Honor Award, 1975
- Philadelphia Boxing Scholarship Foundation:  Distinguished Leadership Award, 1998
- Philadelphia American:  Man of the Year for recognition of unselfish dedication and heroism, 1998
- Philadelphia Boxing Scholarship Foundation Award:  Outstanding devotion and leadership, 2000
- Susan Komen Breast Cancer Foundation:  Recognition for providing security at black-tie fundraising events, 2005

## REFERENCES AVAILABLE UPON REQUEST

9

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 1/11/2019 | Deposition | Lee McGinniss; Blazin Wings, Inc. and Buffalo Wild Wings, Inc. | Richmond, Kentucky | Commonwealth of Kentucy Lincoln Circuit Court | Dram Shop; Premises Liability | D |
| 1/4/2019 | Deposition | Joseph Newton, Jr. and Beth Newton as Surviving Parents and Personal Representatives of the Estate of Jonathan Alexander Newton v. BH Management Services, LLC and EAV Apartments, LLC | Atlanta, GA | State Court of DeKalb County State of Georgia | Premises Liability; Negligent Security | P |
| 12/19/2018 | Deposition | Kelly Titano v. Target Corporation | Anderson, SC | United States District Court for the District of South Carolina Anderson Division | Negligent Security; Breach of Privacy | P |
| 12/18/2018 | Deposition | Timothy B. Osbon, M.D. , M.S. and Paige Somers Osbon v. Yale Enforcement Services, Inc. | Charleston, SC | United States District Court for the District of South Carolina Charleston Division | Negligent Security | D |
| 12/14/2018 | Deposition | Pete Romero v. Circle K Stores, Inc., James Grogan, Mark Stannebein and Samuel Wilson | Albuquerque, NM | State of New Mexico County of Santa Fe First Judicial District | Negligent Security | P |

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 12/5/2018 | Deposition | Tiffany Greenfield as Next Friend and Guardian ad litem for Ethan Ford, a minor v. Budget of Delaware, Inc. | Wilmington, DE | Superior Court of the State of Delaware | Negligent Security | P |
| 11/27/2018 | Trial | Julia Scott Lowry and Tammy Lowry-Gault, Administratrixes of the Estate of Donald Lowry v. J.W.R., Inc. d/b/a JR's Bar and Aaron Auber and Wesley Richards and Walter Banks | Pittsburgh, PA | In the Court of Common Pleas of Allegheny County, Pennsylvania | Negligent Security; Bar Operations | P |
| 11/21/2018 | Deposition | Cortney Dixon v. Texas Roadhouse, Inc. and Amber N. Scales and William Bruce Ellington | Somerset, KY | Commonwealth of Kentucky Pulaski Circuit Court | Dram Shop | D |
| 11/20/2018 | Deposition | Aretha House v. Isle of Capri Casinos, Inc. and IOC-LULA, Inc. | Helena, AR | In the Circuit Court of Philips County, Arkansas Civil Division | Negligent Security | P |
| 11/7/2018 | Deposition | Lorraine Tomlinson v. Howard Theater Entertainment and DNP Investigation and Security | Washington, DC | Superior Court of the District of Columbia Civil Division | Negligent Security; Excessive Force | P |
| 9/11/2018 | Deposition | David Wade, as father and next friend of Austin Wade, a minor v. Bravo Florida, LLC d/b/a Burger King | Palatka, FL | In the Circuit Court, Seventh Judicial Circuit, In and For Putnam County Florida | Negligent Security | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 9/5/2018 | Deposition | Erik Echols v. Garden State Plaza | Hackensack, NJ | Superior Court of New Jersey Law Division, Bergen County | Negligent Security in Mall; Excessive Force | P |
| 8/24/2018 | Deposition | Michael E. Blackwell v. Another 1 Night Stand, LLC d/b/a The One Night Stand | Tampa, FL | In the Circuit Court of the 13th Judicial Circuit of the State of Florida, in and for Hillsborough County Civil Action | Crowd Control; Negligent Security; Bar/Nightclub Operations | P |
| 8/17/2018 | Trial | Nicholas Pastor v. 904 Las Olas, Inc. d/b/a Mangos Restaurant and Lounge | Fort Lauderdale, FL | In the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida | Negligent Security; Crowd Control; Bar/Nightclub Operations | P |
| 7/9/2018 | Trial | Juan Molina v. Trent Motel Associates et al | Philadelphia, PA | Philadelphia County Court of Common Pleas Trial Division | Hotel Security | P |
| 6/21/2018 | Deposition | Valencio Pires v. The Miss America Organization and State of Maryland | Annapolis, MD | Montgomery County Circuit Court, Maryland Civil Division | False Arrest | P |
| 6/18/2018 | Deposition | Estate of Donald Walker, II v. Electric Cowboy of Memphis | Memphis, TN | In the Circuit Court of Shelby County, Tennessee for the Third Judicial District at Memphis | Dram Shop; Negligent Security; Bar Operations | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|------|----------------|--------------|----------|--------------------|--------------|-----|
| 6/6/2018 | Trial | Christona Toussaint v. Little Portugal Café, Inc. d/b/a Candelas Bar Restaurant, Inc. and Fausto R. Arias and Adams & Tabor Real Estate LP | Philadelphia, PA | Philadelphia County Court of Common Pleas Trial Division | Negligent Security; Premises Liability; Bar Operations | P |
| 5/29/2018 | Deposition | Cheri Marchionda v. Embassy Suites, Inc. and Hilton Worldwide, Inc. and John Q. Hammons Hotels, Inc. and Atrium TRS III, LP | Des Moines, IA | United States District Court; Southern District Iowa | Negligent Security; Hospitality Security; Hotel Operations; Dram Shop | P |
| 5/18/2018 | Deposition | Amy Shillingburg, as Guardian of the Estate of Dennis L. Crowe, III, an incompetent person v. The Majestic Star Casino, LLC, The Majestic Star Casino, II, LLC | Indianapolis, IN | In The Superior Court of the County of Marion State of Indiana | Dram Shop; Negligent Security | P |
| 5/15/2018 | Deposition | Robin Lewis v. AC Night Club d/b/a Dusk Night Club; Dusk Management Group; AC Night Life, LLC; Savage Men | Atlantic City, NJ | Superior Court of New Jersey Law Division Atlantic County | Premises Liability | P |
| 4/6/2018 | Deposition | Laura Zamora v. Pocono Manor Investors PT I LP, Matzel Development at Pt LP, and Ireland Hotels, Inc. (all d/b/a Pocono Manor Inn, d/b/a The Inn at Pocono Manor, d/b/a Pocono Manor Inn & Golf Resort, and d/b/a Pocono Manor Resort & Spa) | Stroudsburg, PA | Court of Common Pleas of Monroe County, Pennsylvania Civil Division | Dram Shop:  Security | D |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 3/27/2018 | Deposition | Miryam Metcalf v. Hot Springs Mall Associates, LLC; Hot Springs Management, Inc.; Spinoso Real Estate Group DLS, LLC; Spinoso Management Group, LLC; 4501 Central Avenue Holdings, LLC; Larry Lavell Jones; Aronov Realty Company, Inc.; Aronov Realty Management, Inc. and ERMC II, L.P. | Hot Springs, AR | In the Circuit Court of Garland County, Arkansas 3rd Division | Negligent Security | D |
| 3/23/2018 | Deposition | Katerial Wiggins as Administratix of the Succession of Dominic G. Turner, Katerial Wiggins, as Tutrix of Minor Dominic Gerard Turner, Jr., and Katerial Wiggins, Individually v. Mobile Greyhound Park | Mobile, AL | In the Circuit Court for Mobile County, Alabama | Dram Shop | D |
| 3/19/2018 | Deposition | Ronald Mariani and Lynn Mariani v. The Estate of Robert P. Zimmerman; Double V Rod and Gun Club, Inc.; Harry Linden; Joseph Partington; Karen Crowe; Crystal Springs Builder; Crystal Springs North, LLC | Hackensack, NJ | Superior Court of New Jersey Law Division: Bergen County | Negligent Security | D |
| 3/1/2018 | Deposition | Stephen J. Abbott v. Bally's Park Place, Inc. and Caesars Entertainment Inc. and Boardwalk Regency Corp. and Dusk Nightclub | Atlantic City, NJ | Superior Court of New Jersey Atlantic County Law Division | Dram Shop; Negligent Security | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 2/26/2018 | Deposition | Laura Tracy, individually and as Guardian Ad Litem of Daniel Tracy v. Township of Ocean Board of Education; Ocean Township High School; Township of Ocean; Township of Ocean Police Department | Freehold, NJ | Superior Court of New Jersey Law Division- Monmouth County | Negligent Security | P |
| 2/2/2018 | Deposition | Nicholas Pastor v. 904 Las Olas, Inc. d/b/a Mangos Restaurant and Lounge | Fort Lauderdale, FL | In the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida | Negligent Security; Crowd Control; Bar/Nightclub Operations | P |
| 1/30/2018 | Deposition | The Estate of Arturo Quintero Toy v. Ben E. Keith Company and Miguel Angel Moctezuma | El Paso, TX | In the District Court 210 District - El Paso County, Texas | Liquor Liability | P |
| 12/6/2017 | Trial | Anthony Coyle v. Pocono Restaurant Inc.  d/b/a Amber Steakhouse Restaurant | Stroudsburg, PA | Court of Common Pleas of Monroe County, Pennsylvania Civil Division | Liquor Liability; Bar Management; Bar Operations; Bar Security | P |
| 12/4/2017 | Trial | Michael Driscoll v. The Columns | Freehold, NJ | Superior Court of New Jersey Law Division - Monmouth County | Bar/Restaurant Security; Bar Restaurant Operations; Use of Force | P |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 11/16/2017 | Trial | Richard Edelson and Christina Edelson v. Robert Azud, The Capitol Theatre, Peter Shapiro, M. Ravikoff Associates, Telco Holding Corp. and Garcia's Capitol Enterprises, Inc. The Bowery Presents, LLC | Poughkeepsie, NY | Supreme Court of the State of New York, County of Dutchess | Nightclub/Bar Management; Bar Operations; Dram Shop; Crowd Control Concert Venue | D |
| 10/19/2017 | Deposition | Jarrett Williams v. La Flama de Oro Enterprises, Inc., Lester Beale, Francisco Garcia and IHSS7 Event Staffing & Special Services, LLC | Aurora, IL | In the Circuit Court of the Sixteenth Judicial Circuit Kane County, Illinois | Negligent Security; Bar Operations; Negligent Hiring/ Retention | P |
| 10/3/2017 | Trial | Anthony James v. Magic City Club and Luqman Munir | Florence, SC | State of South Carolina, Court of Common Pleas, County of Florence | Negligent Security; Nightclub/Bar Security;  Use of Force; Nightclub/Bar Operations; Service of Alcohol; Piercing the Corporate Vail | P |
| 9/12/2017 | Trial | James E. Beck v. Minerals Resort & Spa d/b/a Kites | Newton, NJ | Superior Court of New Jersey Law Division - Sussex County | Negligent Bar/Restaurant Security; Negligent Hotel Security; Negligent Parking Lot Security | P |

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 9/7/2017 | Deposition | Estate of Justin Plumlee v. 11 Center Street Associates d/b/a Folly Beach Shrimp Co., and Andrew Lanzaro | Charleston, SC | In the Court of Common Pleas for the Ninth Judicial Circuit, State of South Carolina County of Charleston | Dram Shop; Negligent Hiring; Negligent Retention; Negligent Security | P |
| 9/6/2017 | Deposition | Joshua Milligan v. Rock on the River; Scott Sheckler; Jill Sheckler; Sheckler Management; Country on the River | Prairie du Chien, WI | United States District Court for the Western District of Wisconsin - Crawford County | Negligent Security; Negligent Event Planning and Security | P |
| 6/1/2017 | Deposition | Oliver Caron v. NCL Ltd. | Miami, FL | United States District Court for the Southern District of Florida Miami Division | Dram Shop; Negligent Security | D |
| 5/2/2017 | Deposition | Estate of Cary R. Mattos v. American Legion Post et al | Newton, NJ | Superior Court of New Jersey Law Division - Sussex County | Bar Operation Negligent Security | P |
| 3/29/2017 | Trial | Richard Rivera v. Cuba Libre; Guestcounts Hospitality; Olbys Artigas; Matthew Poole | Atlantic City, NJ | Superior Court of New Jersey Law Division - Atlantic County | Bar/Nightclub Security and Operations; Use of Force | P |
| 3/22/2017 | Trial | Annette Rauch and Edward Rauch v. Nardi's Tavern | Flemington, NJ | Superior Court of New Jersey Law Division - Hunterdon County | Bar/Nightclub Security and Operations; Use of Force | P |
| 2/27/2017 | Deposition | Estate of Taylor Evans v. Jacksonville Landing Investments | Jacksonville, FL | Circuit Court, Fourth Judicial Circuit Duval County | Negligent Security; Parking Lot; Assault by Vehicle | P |

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 1/27/2017 | Deposition | Estate of Ethan P. Connolly v. University of Delaware | Wilmington, DE | Superior Court of the State of Delaware: New Castle County | Negligent Security; Premises Liability | P |
| 12/19/2016 | Trial | Nunez and Cuevas v. Little Portugal Café | Philadelphia, PA | Court of Common Pleas of Philadelphia County | Negligent Security Nightclub and Strip Mall | P |
| 12/13/2016 | Deposition | Marvin Ortiz for Estate of Suamy Ortiz v. Precision Security Agency, Inc. | Newark, NJ | Superior Court of New Jersey Law Division: Essex County | Dram Shop/Negligent Security | D |
| 12/5/2016 | Deposition | Nicole Webb for Estate of Phillip Webb v. Carnival Corporation | Miami, FL | United States District Court for the Southern District of Florida Miami Division | Dram Shop/Security Cruise Ship | P |
| 11/30/2016 | Hearing | 61st Street Adult Cabaret | Philadelphia, PA | Philadelphia Zoning Board of Adjustment | Risk Assessment | Appellant |
| 11/3/2016 | Trial | Robert Kutina v. LaQuinta Inn & Suites | Newark, NJ | Superior Court of New Jersey Law Division: Middlesex County | Hotel Security; Assault | P |
| 10/20/2016 | Trial | Joshua Mathews v. Jensen's Liquor Store, Inc. et al | Jacksonville, FL | Circuit Court, Fourth Judicial Circuit Duval County | Crowd Control; Bar Operations; Negligent Security | P |
| 10/13/2016 | Daubert Hearing | Joshua Mathews v. Jensen's Liquor Store, Inc. et al | Jacksonville, FL | Circuit Court, Fourth Judicial Circuit Duval County | Crowd Control; Bar Operations; Negligent Security | P |
| 8/31/2016 | Trial | Carol Ann Forrester v. Huckleberry Entertainment, LLC, d/b/a Fun City | Des Moines, IA | Iowa District Court for Des Moines County | Negligent Security in a Casino; Crowd Management / Crowd Control; Premises Liability | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 8/24/2016 | Deposition | Stephanie Dabek v. Blue Line Security Services, et al | Washington, DC | Superior Court of the District of Columbia Civil Division | Negligent Security; Crime Prevention; Robbery/Assault; Premises Liability | P |
| 8/5/2016 | Trial | James Coley v. Keystone Turf Club, Inc., et al | Philadelphia, PA | Court of Common Pleas Philadelphia County | Crowd Management; Assault/Negligent Security | P |
| 7/27/2016 | Deposition | Kelly Gerber v. Wal-Mart Stores, Inc., et al | Charleston, South Carolina | County of Berkeley, Court of Common Pleas Ninth Judicial Circuit | Crowd Management; Assault/Premises Liability | P |
| 6/3/2016 | Deposition | Paris Marshall v. Oak Tavern, Inc. et al | Vineland, NJ | Superior Court of New Jersey, Law Division - Cumberland County | Active Shooter; Bar Operation; Negligent Bar Security; Premises Liability | P |
| 4/25/2016 | Deposition | Jorge Gonzalez v. Stoneybrook West Golf Club, LLC, Inc. etc. | Orlando, FL | Ninth Judicial Circuit in and for Orange County, Florida  General Jurisdiction Division | Liquor Liability | P |
| 4/21/2016 | Trial | Heather Baumgardner v. Sofitel; Accor S.A., et al | Philadelphia, PA | Court of Common Pleas Philadelphia County | Hotel Operations; Negligent Security | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 3/23/2016 | Deposition | Julian Binger v. VC Lauderdale, Inc. | Ft. Lauderdale, FL | 17th Judicial Circuit Court in and for Broward County, Florida | Negligent Hiring; Negligent Retention; Excessive Force by Security; Bar Operations | P |
| 2/18/2016 | Deposition | Estate of Sunil Rattu v. Trump Entertainment Resorts, Inc.,; et al | New Brunswick, NJ | Superior Court of New Jersey Law Division - Middlesex County | Negligent Security Parking Garage; Homicide; Assault; Car Jacking | P |
| 2/12/2016 | Sworn Declaration | Medina v. Hard Rock Café International et al | Gulf Port, MS | Chancery Court of Jackson County, Mississippi | Liquor Liability; Bar Operations; Security | D |
| 1/14/2016 | Deposition | Carol Ann Forrester v. Huckleberry Entertainment, LLC, d/b/a Fun City | Des Moines, IA | Iowa District Court for Des Moines County | Negligent Security in Casino; Crowd Control; Premises Liability | P |
| 12/4/2015 | Deposition | Kenneth K. Miller v. Live Nation Worldwide, Inc. | Baltimore, MD | United States District Court Southern District of Maryland | Negligent Security; Premises Liability; Crowd Control; Concert Venue Management | P |
| 10/30/2015 | Deposition | Estate of Phillip Heiler v. The Diving Horse et al | Atlantic City, NJ | Superior Court of New Jersey Law Division: Atlantic County | Dram Shop; Bar Operations; Security; Death by Alcohol Poisoning | P |
| 10/26/2015 | Deposition | D'Amico v. National Event Services | Camden, NJ | Superior Court of New Jersey Law Division: Camden County | Use of Force; Premises Liability | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 10/1/2015 | Trial | Kyle Joseph Mundy v. Delaware Golf and Travel, LLC and Gold Club Partners, LTD | Wilmington, DE | Superior Court of the State of Delaware: New Castle County | Use of Force; Premises Liability | D |
| 8/19/2015 | Deposition | Michele Gellis et al v. Fairmont Hotels & Resorts, Inc. et al | Phoenix, AZ | Superior Court, State of Arizona: Maricopa County | Hotel Operations; Safety Management; Premises Liability | P |
| 6/29/2015 | Deposition | Terence Ware and Kathleen Ware v. Westside Village Tavern et al | Paterson, NJ | Superior Court of New Jersey Law Division: Passaic County | Bar Security; Bar Operations; Excessive Force | P |
| 6/26/2015 | Deposition | Michael Kidd v. Mid-Con Hospitality Group | Chicago, IL | Circuit Court of the Twelfth Judicial Circuit Will County, Illinois | Hotel Room Invasion; Negligent Security/ Hotel Operations | P |
| 6/12/2015 and 6/16/2015 | Deposition | Matthew Hollingsworth Administrator of the Estate of Houston Calhoun v. 7-Eleven, Inc. et al | Camden, NJ | Superior Court of New Jersey Camden County | Homicide of Customer by 7-Eleven Employee; Premises Liability; Negligent Hiring; Negligent Security | P |
| 5/5/2015 | Deposition | Jose Manuel Gonzalez v. Keys J.J. Doghouse, Inc., et al | Key West, FL | Circuit Court, 16th Judicial Circuit Monroe County | Premises Liability; Bar Security; Bar Operations | P |
| 4/1/2015 | Deposition | Demetrios Demetriou v. Café Saint-Ex | Washington, DC | Superior Court of the District of Columbia Civil Division | Negligent Security; Bar Operations; Premises  Liability | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 3/27/2015 | Deposition | Tyrone Pratt v. RPAI US Management, et al | Upper Marlboro, MD | Circuit Court for Prince George's County, Maryland Civil Division | Negligent Security; Bar Operations; Premises  Liability | P |
| 3/11/2015 | Trial | Matthew Smith v. Bijou, LLC et al | Philadelphia, PA | Court of Common Pleas Philadelphia County | Negligent Security; Bar Operations; Dram Shop; Premises  Liability | P |
| 3/4/2015 | Trial | Elana Hudson v. Buckeye Beverage Corporation d/b/a Connor's Pub | Indianapolis, IN | State of Indiana, County of Marion:  Marion County Superior Court | Premises Liability; Bar Security; Liquor Liability; Bar Operations | P |
| 2/27/2015 | Deposition | Michael Kidd v. Mid-Con Hospitality Group | Chicago, IL | Circuit Court of the Twelfth Judicial Circuit Will County, Illinois | Hotel Room Invasion; Negligent Security/ Hotel Operations | P |
| 2/24/2015 | Deposition | Diego Gonzalez v. Father English Community Center et al | Paterson, NJ | Superior Court of New Jersey Law Division: Passaic County | Crowd Control/Negligent Security; Assault on Concert Goer | P |
| 12/16/2014 | Trial | Jared DeLorenzo v. Buffalo Billiards Philadelphia LP et al | Philadelphia, PA | Court of Common Pleas Philadelphia County | Bar Security; Bar Operations; Excessive Force | P |
| 12/15/2014 | Deposition | Joshua Mathews v. Jensen's Liquor Store, Inc. et al | Jacksonville, FL | Circuit Court, Fourth Judicial Circuit Duval County | Crowd Control; Bar Operations; Negligent Security | P |
| 11/24/2014 | Trial | John Waerig and Jennifer Waerig v. MG 3517, LLC and Pat's 3517, Inc. and Hammerheads Sports Bar & Grill | Philadelphia, PA | Court of Common Pleas Philadelphia County | Negligent Security; Excessive Force | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|------|---------------|-------------|----------|-------------------|--------------|-----|
| 10/7/2014 | Deposition | Kyle Fann v. Macking VIII, Inc., and Kings Management Company, Inc. | Kansas City, KS | District Court of Wyandotte County, Kansas | Negligent Security; Shooting and Robbery in McDonalds's Parking Lot | P |
| 9/17/2014 | Deposition | William Marc Battista v. Brass Ring Pub of RPB, LLC | Miami, FL | 11th Judicial Circuit Court Miami-Dade County, State of Florida | Bar Operations; Negligent Security; Excessive Force | P |
| 8/28/2014 | Deposition | Hank Jackson v. Luckie's Tavern, et al | Baltimore, MD | Circuit Court for Baltimore City and State of Maryland | Bar Operations; Excessive Force | D |
| 8/28/2014 | Rule 26(b)(4) Statement | Federico Garay v. U Street Music Hall, LLC | Washington, DC | Superior Court of the District of Columbia Civil Division | Bar Operations; Bar Security | D |
| 6/17/2014 | Deposition | Elana Hudson v. Buckeye Beverage Corporation d/b/a Connor's Pub | Indianapolis, IN | State of Indiana, County of Marion:  Marion County Superior Court | Bar Operations; Security; Premises Liability | P |
| 4/15/2014 | Deposition | Threadgill v. TD's | Albuquerque, NM | State of New Mexico County of Sandoval Thirteenth Judicial District Court | Crowd Control; Bar Security/ Bar Operations | D |
| 3/31/2014 | Deposition | Joel Membreño-Navarro v. Cancun Bar, et al | New Brunswick, NJ | Superior Court of New Jersey Law Division: Middlesex County | Crowd Control; Negligent Security/ Bar Operations/ Excessive Force | P |
| 1/16/2014 | Deposition | Glen G. LePoidevin v. Big Ed's BBQ, Inc. | New Brunswick, NJ | Superior Court of New Jersey Law Division: Middlesex County | Dram Shop/ Bar Security/ Bar Operations | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 11/22/2013 | Deposition | Alfred Wilson et al v. Borgata Hotel, Casino and Spa Inc. et al | Atlantic City, NJ | Superior Court of New Jersey: Law Division Atlantic County | Crowd Control; Negligent Security/ Excessive Force | P |
| 11/4/2013 | Trial | Michael Knezevic and Tina Knezevic v. Wellmont Theatre | Newark, NJ | Superior Court of New Jersey: Law Division Essex County | Negligent Security/ Bar Operations/ Assault by Bouncer | P |
| 10/25/2013 | Trial | Sandoval v. Tambora Café | Philadelphia, PA | Court of Common Pleas Philadelphia County | Negligent Security Landlord of Strip Mall and Bar | P |
| 10/21/2013 | Trial | Estate of Bachleitner v. The District Lounge & Grille | Washington, DC | Superior Court of the District of Columbia Civil Division | Bar Operations/ Negligent Security/ Fatal Dram Shop | D |
| 10/9/2013 | Deposition | Richard Gary Robins, Jr. v. Sea Oaks Country Club | Toms River, NJ | Superior Court of New Jersey: Law Division Ocean County | Negligent Security/Assault in Parking Lot | P |
| 7/26/2013 | Sworn Expert Declaration | David Cormia v. Cheetah's West Palm Beach | Palm Beach, FL | 15th Judicial Circuit Court Palm Beach County | Dram Shop/ Bar Operations | D |
| 7/25/2013 | Hearing | Appeal of Delilah's Den; Club Risqué; and Cheerleaders | Philadelphia, PA | Tax Review Board | Bar Operations/ Hospitality Expert | Appellant |
| 7/23/2013 | Deposition | Justin Baldwin v. Georgia King Village; Beacon Residential Mgmt.; Sterling Security, et al | Newark, NJ | Superior Court of New Jersey: Law Division Essex County | Aggravated Assault by Shooting in Apartment Complex/ Negligent Security | D |
| 6/27/2013 | Sworn Expert Declaration | Sharon Davis, et al v. City of New York; New York Police Department et. al. | New York City | Supreme Court of the State of New York, County of Queens | Crowd Control/Inadequate Security at Major Concert Event | D |

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 6/26/2013 | Trial | Monte Freire v. Chowder Pot, III, LTD, et al | New Haven, CT | Judicial District of New Haven at New Haven | Dram Shop/Bar Operation Standard of Care/Negligent Security | D |
| 6/25/2013 | Deposition | Estate of Darnell Raynard Parker v. Studio A | Miami, FL | 11th Judicial Circuit Court Miami-Dade County, State of Florida | Crowd Control; Negligent Security/ Bar Operations/ Fatal Shooting in Nightclub | P |
| 6/10/2013 | Deposition | Monte Freire v. Chowder Pot, III, LTD, et al | New Haven, CT | Judicial District of New Haven at New Haven | Dram Shop/Bar Operation Standard of Care/Negligent Security | D |
| 5/29/2013 | Deposition | Estate of Jordan J. Griner v. Door 44, LLC d/b/a Door 44 | Atlanta, GA | State Court of Fulton County State of Georgia | Dram Shop/ Standard of Care | D |
| 4/18/2013 | Sworn Expert Declaration | Marcus Bount v. Maryland Skating of Baltimore, LLC | Baltimore, MD | US District Court of Maryland Baltimore Division | Crowd Control; Inadequate Security, Robbery and Stabbing of Patron | P |
| 4/11/2013 | Deposition | Samantha Tomacelli v. Tomfooleries and Buzzard Beach Lounge | Kansas City, MO | Circuit Court Jackson County Missouri | Dram Shop | P |
| 2/5/2013 | Trial | Kenneth Peters v. BOLA Inc. t/a Ashton Pub | Philadelphia, PA | Court of Common Pleas County of Philadelphia | Negligent Security/ Crowd Control; Assault Patron on Patron | P |
| 7/13/2012 | Deposition | Jesse Michaud v. Borgata Hotel, Casino & Spa et al | Atlantic City, NJ | Superior Court of New Jersey Law Division: Burlington County | Assault Patron on Patron; Inadequate Security in Casino | P |

Russell Kolins

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 5/9/2012 | Deposition | Jeffrey Budzinski v. Live Nation; Theater of the Living Arts | Trenton, NJ | Superior Court of New Jersey Law Division Mercer County | Negligent Security/ Crowd Control; Injury to Concert Goer | P |
| 3/23/2012 | Sworn Expert Declaration | James Lewis Long v. Looney's Pub et al | Bel Air, MD | Circuit Court for Harford County, MD | Assault Outside Bar/Parking Lot | D |
| 3/9/2012 | Deposition | James Brown v. American Legion Theodore Roosevelt Post #4 | Vineland, NJ | Superior Court of New Jersey Law Division Gloucester County | Negligent Security/ Assault by Shooting in Venue Parking Lot | P |
| 2/10/2012 | Deposition | Estate of Bachleitner v. The District Lounge & Grille | Washington, DC | Superior Court of the District of Columbia Civil Division | Bar Operations/ Negligent Security/ Fatal Dram Shop | D |
| 1/18/2012 | Trial | Commonwealth v. Amin Speakes | Philadelphia, PA | Court of Common Pleas Criminal Division | Homicide by Shooting Qualified as Security Expert on Video Surveillance for Alibi Defense Verdict: Not Guilty | D |
| 11/29/2011 | Legislation | Philadelphia City Council Bouncer's Bill | City Hall Council Chambers | Philadelphia City Council | Expert Alcohol/Security Consultant to City Council | Legislative |
| 9/9/2011 | Trial | Nicholas Ratkowski v. Houlihan's; Al Valverde Security; Paramus Restaurant LLC; Thirty Five Plaza Associates | Hackensack, NJ | Superior Court of New Jersey Law Division: Bergen County | Assault/Parking Lot/Inadequate Security/Premises Liability | P |
| 6/23/2011 | Trial | Jacqueline Ferry v. Pure Night Club | Philadelphia, PA | Court of Common Pleas County of Philadelphia | Rape of Patron/ Negligent Security | P |

Russell Kolins

YEARS 2009-2019

| DATE | TESTIMONY TYPE | CASE CAPTION | LOCATION | COURT JURISDICTION | INCIDENT TYPE | P/D |
|---|---|---|---|---|---|---|
| 4/7/2011 | Trial | Samuel Kipp v. Pepper Pots Pub, et al | Camden, NJ | Superior Court of New Jersey Law Division: Camden County | Dram Shop/ Assault/ Negligent Security/ Premises Liability | P |
| 3/2/2011 | Trial | Jeffrey Nicolary v. 12th Air Command | Philadelphia, PA | Court of Common Pleas County of Philadelphia | Assault/Excessive Force of Patron | P |
| 9/1/2010 | Deposition | Daniel Okafor v. Borgata Casino Hotel, Marina District, Boyd Gaming; Mixx Night Club; Atlantic City Police Department | Camden, NJ | Superior Court of New Jersey Law Division: Camden County | Crowd Control/ Negligent Security; Assault/Excessive Force on Concert Goer | P |
| 8/12/2010 | Sworn Expert Declaration | William Drake v. The Fillmore & Live Nation Worldwide | San Francisco, CA | Superior Court for the State of California; County of San Francisco | Assault on Concert Goer/ Inadequate Security | P |
| 2/25/2010 | Statement of Review | Mary Doe v. Realty World Properties, Inc., et al. | Philadelphia, PA | Court of Common Pleas County of Philadelphia | Rape of Tenant/ Assault/ Negligent Security/ Premises Liability | P |
| 11/21/2009 | Deposition | Armando Garcia  v. McAteer's Restaurant | Somerset, NJ | Superior Court of New Jersey Law Division: Somerset County | Dram Shop/Assault on Responding Police Officer | P |
| 10/1/2009 | Deposition | David Carpenter Jr., v. Sweta Inc.; Delux Inn; Jayesh Patel | Ft. Myers, FL | Circuit Court for the Twentieth Judicial Circuit in and for Lee County, FL | Motel Room Invasion/ Negligent Security | P |
| 8/27/2009 | Deposition | Estate of Zelaya v. Madison Square Garden | New York | US District Court for the Southern District of New York | Dram Shop/ Negligent Security Double Fatality | P |

# KOLINS SECURITY GROUP

***PROFESSIONAL INVESTIGATION \* SECURITY CONSULTANT \* EXPERT WITNESS***
**1528 Walnut Street, Suite 600, Philadelphia, PA 19102**
LEGALAGENT@AOL.COM

**(215) 735-2131**                                                                          **fax:  (215) 790-6210**

## Fee Structure and Agreement for Expert Services

**CASE REVIEW and PREPARATION:**

**Services may include, but are not limited to**:

- Consultation and Forensic Investigation:

| | |
|---|---|
| Site inspection | Business/corporate background of party(s) |
| Interviews | Document review |
| Photography | Research:  (Industry standards and practices) |
| Scene sketching | Deposition, trial and report preparation |

Minimum Required Retainer Fee: $2,500.00 (non-refundable).  Covers review, analysis and consult.  Additional hourly rate is $350.00.  Retainer is for labor only.  It does not cover expenses.

**DEPOSITION and TESTIMONY (INCLUDES VIDEO):**

Client is responsible for payment of deposition or trial testimony fee and costs which may be obtained from opposing counsel prior to appearance.  All outstanding invoices must be paid by client prior to appearance at deposition or trial.

Two thousand ($2,000) flat rate up to four (4) hours.  Three thousand, five hundred ($3,500) flat rate for full day total per day if over four (4) hours.

If trial or deposition is over 75 miles from 1528 Walnut Street, Philadelphia, PA and additional consecutive days are required for testimony or courtroom observation, flat rate is $2,000 for overnight and each additional overnight stay plus lodging and meals.  Per diem is $75.00 per day.

Travel time over 50 miles from 1528 Walnut Street, Philadelphia, PA is $150 per hour plus tolls, mileage and parking.

Client will be responsible to pay a cancellation fee in the amount of $1,000 for any scheduled deposition or trial appearance canceled within 48 hours of appearance, as well as non-refundable airfare and hotel costs.

**REPORTS:**

Written reports will not be prepared unless requested by client.

**TRAVEL TIME and RELATED EXPENSES (Non Testimony Purpose):**

Travel time hourly rate is $150.00.  All expenses are to be paid for by the client, including lodging, meals and cost of travel.  Mileage is billed at current IRS approved rate.  Air fare is based on refundable full coach ticket price and must be paid in advance by client.  Travel will not occur until payment is received.

**INTERIM BILLING**

Client may be billed monthly after initial retainer is exhausted.  Invoices are due upon receipt within 30 days.  Past due interest rate charged at 1.5% compounded monthly.  All outstanding invoices must be current before testimony is provided at deposition or trial.  If collection becomes necessary, client will be responsible for all reasonable legal fees and costs.

**EMPLOYMENT RELATIONSHIP**

This agreement is between the law firm and Kolins Security Group.  The law firm and not the law firm's client will be responsible for all payments of invoices.

Attorney_____Date:_____
                                          Signature
Name of Case:_____
                                          Please Print

**MEISTER LAW LLC**
44 W FLAGLER ST STE 750
MIAMI, FL 33130
(305) 590-5570

COCONUT GROVE BANK
MAIN OFFICE
2701 SOUTH BAYSHORE DRIVE
COCONUT GROVE, FLORIDA 33133

63-460/660  01

4565

1/16/2019

PAY TO THE
ORDER OF     Kolins Security Group                                                          **2,500.00
                                                                                                  $

Two Thousand Five Hundred and 00/100*********************************************************************************

                                                                                              DOLLARS

Kolins Security Group
1528 Walnut Street
Suite 600
Philadelphia, PA 19102

MEMO    Charlene Major v. Carnival- retainer

⑈004565⑈ ⑆066004600⑆ 0187525206⑈

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER
THE BACK OF THIS DOCUMENT CONTAINS CHECK SECURITY WATERMARK AND COIN REACTIVE INK

**MEISTER LAW LLC**
Kolins Security Group
Client Cost Advanced:4162 · Major, Charl  Retainer

1/16/2019

4565

2,500.00

COCONUT GROVE B    Charlene Major v. Carnival- retainer                                 2,500.00

**MEISTER LAW LLC**
Kolins Security Group
Client Cost Advanced:4162 · Major, Charl  Retainer

1/16/2019

4565

2,500.00

COCONUT GROVE B    Charlene Major v. Carnival- retainer                                 2,500.00

LR2206M1        OTS LEGAL  954-846-9399                                              PRINTED IN U.S.A.