**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORID**

**CASE NO.: 18-21914-CIV-SCOLA**

CHARLENE MAJOR,

     Plaintiff,

vs.

CARNIVAL CORPORATION

     Defendant.

_____/

**PLAINTIFF'S MOTION TO STRIKE AND/OR _DAUBERT_ MOTION**
**TO PRECLUDE THE TESTIMONY  AND OPINIONS OF**
**DEFENDANT'S EXPERTS SINGER, TRENDOWSKI, RANSLEM,**
**MCKAY, AND HAMILTON**

Plaintiff, CHARLENE MAJOR, by and through undersigned counsel, and pursuant to the applicable Federal Rules of Civil Procedure, hereby files its Motion to Strike and/or _Daubert_ Motion to Preclude the Testimony and Opinions of Defendant CARNIVAL CORPORATION (Carnival)'s experts Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, John Keel McKay, and Dr. Richard Hamilton, as untimely disclosed witnesses and pursuant to _Daubert v. Merrell Dow Pharms., Inc._, 509 U.S. 579 (1993) and its progeny, and states:

**INTRODUCTION**

This is a maritime personal injury action wherein Plaintiff, CHARLENE MAJOR, ("Plaintiff"), seeks damages for injuries sustained while she was a passenger aboard the Carnival Imagination. Plaintiff, a black female, was the victim of a racial hate crime.   She was verbally assaulted (called a "black nigger bitch") and physically attacked (including being

1

knocked to the ground and kicked in the face) by two other passengers (a Caucasian male and female) in the casino.   The night prior to the subject attack the casino manager had notified ship's security of problems with the male assailant. Carnival did not properly monitor this known aggressive passenger and overserved alcohol.   In the 15 hours prior to the subject incident the male assailant purchased 28 alcoholic beverages (5 of which were doubles and notably the last 5 drinks Carnival provided to him free of charge).   In the 4 hours prior to the subject incident the female assailant consumed 4 double drinks, which is the equivalent of 8 drinks.

Defendant's experts Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay should be precluded from offering any opinions at trial because (1) they were not timely disclosed as expert witnesses and (2) their opinions are not rebuttal.

Defendant's experts Allen Mark Singer and Dr. Richard Hamilton did not (1) utilize a proper and reliable methodology to survive a *Daubert* challenge; (2) they base their opinions on assumptions and speculation, not facts; and, (3) their opinions would confuse instead of assist the trier of fact. As set forth below, Plaintiff's motion should be granted.

## RELEVANT FACTUAL BACKGROUND

1.  Plaintiff filed a one count negligence Complaint that claims Defendant failed to provide Plaintiff with reasonable care by overserving alcohol and failing to take reasonable steps to protect her.   [DE 1 at ¶¶ 14-15].

2.  Pursuant to this Court's Scheduling Order [DE 10] setting the trial date as July 22, 2019 and Federal Rule of Civil Procedure 26(a)(2)(D)(i), the parties were required

to disclose experts, expert witness summaries, and reports on or before March 8, 2019.

3.     Defendant timely disclosed experts Dr. Kenneth Fischer (neurologist) and Dr. Richard Hamilton (clinical neuropsychologist); however, only provided a report for Dr. Fischer.   Defendant did not provide Dr. Hamilton's report until thirty (30) days later.   Plaintiff is <u>not</u> seeking to strike Dr. Hamilton on the basis of his untimely report as it is Plaintiff's understanding that the late report was due to a death in his family.   See Defendant's Expert Witness Disclosures, attached hereto as Exhibit "A" and Defendant's Supplemental Expert Witness Disclosures attached hereto as Exhibit "B."

4.     On April 8, 2019 – thirty (30) days after the expert disclosure deadline – Defendant disclosed for the very first time experts Allen Mark Singer (psychiatrist), Elizabeth Trendowski (dram shop, bar operations and liquor liability forensics), Corey D. Ranslem (security), and John Keel McKay (psychologist and rehabilitation). See Defendant's Rebuttal Expert Witness Disclosures, attached hereto as Exhibit "C."

5.     Notably, Defendant never moved for additional time to file these untimely expert disclosures and reports.

6.     Defendant's experts Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay's reports were untimely served and must be stricken.

7.     Moreover, Dr. Singer is also not qualified to render the opinions contained in any of his reports, he did not use a proper methodology in formulating his opinions, and his opinions are not helpful to the trier of fact. Accordingly, Plaintiff

respectfully submits that any evidence, testimony or opinions from Dr. Singer should be excluded at trial as he fails to meet the requirements for admissible expert testimony set forth in *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993).

8.   Defendant's expert Dr. Hamilton did not use a proper methodology in formulating his opinions and his opinions are not helpful to the trier of fact. Accordingly, Plaintiff respectfully submits that any evidence, testimony or opinions from Dr. Hamilton should be excluded at trial as he fails to meet the requirements for admissible expert testimony set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

9.   For these reasons, as well as those set forth more fully below, Plaintiff respectfully submits that this Honorable Court enter an Order striking and precluding Defendant from offering any evidence, testimony and/or opinions from Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, John Keel McKay, and Dr. Richard Hamilton at trial.

## MEMORANDUM OF LAW

I.   **Motion to Strike**

   A.   **Defendant's Expert Witness Disclosures and Reports of Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay are not proper rebuttal and should be stricken as they were untimely expert disclosures.**

Under the Federal Rules of Civil Procedure, "[a] party must make [expert witness] disclosures at the times and in the sequence that the court orders." See Fed. R. Civ. P. 26(a)(2)(C). Local Rule 16.1(k) requires that when expert opinion evidence is is to be offered at

4

trial, summaries of the expert's anticipated testimony or written expert reports, which include the substance of the facts and all opinions to which the expert is expected to testify and the grounds for each opinion, must be provided. See Local Rule 16.1(k) (emphasis added). The Federal Rules of Civil Procedure further requires that the expert disclosure be accompanied by a written report containing a complete statement of all opinions the witness will express and the bases for those opinions; the data or other information considered by the witness in forming them; any exhibits that will be used to summarize or support them; the witness's qualifications, including a list of all publications authored in the previous 10 years; a list of cases in which the witness testified as a witness in the previous four years; and a statement of the compensation the witness is to be paid for the study and testimony in the case. See Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

These requirements are designed "to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." See Fed. R. Civ. P. 37(c)(1). As the Southern District of Florida has noted on numerous occasions, "the sanction of exclusion [of expert testimony] is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 2010 U.S. Dist. Lexis 54148 *9 (S.D. Fla. 2010) (emphasis added); *United States v. Batchelor-Robjohns*, 95 A.F.T.R.2d (RIA) 3001 *8 (S.D. Fla. 2005) (further

noting that "Rule 37(c)(1) requires absolute compliance with Rule 26(a)…"); *Dyett v. North Broward Hospital District*, 2004 U.S. Dist. LEXIS 30473 (S.D. Fla. 2004) (citing Salgado v. Gen. Motors Corp., 150 F.3d 735, 742 (7th Cir. 1998)).

Additionally, expert reports must contain a complete statement of all opinions an expert will express, and these reports must be "detailed and complete" when submitted. See Fed. R. Civ. P. 26(a); see also Advisory Committee Notes to 1993 Amendments; *Dyett*, 2004 U.S. Dist. LEXIS   30473 *4 ("Expert reports must not be sketchy, vague or preliminary in nature…"); *Reed v. Binder*, 165 F.R.D. 424 (D.N.J 1996) (holding that expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions).

As set forth in detail infra, Defendant should be precluded from offering any opinions and/or testimony from Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay for failure to comply with the requirements of Rule 26. See Fed. R. Civ. P. 37(c)(1).

Defendant in this case failed to timely serve its expert witness disclosures and failed to seek leave of Court to serve the disclosures after the deadline. Instead, Defendant waited four weeks after the expert disclosure deadline to serve "rebuttal" reports.  See Exhibit "C." Defendant could have requested an enlargement of the expert disclosure deadline, but neglected to do so.

"If the purpose of expert testimony is to 'contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one." *Amos v. Makita, U.S.A.*, 2011 U.S. Dist. LEXIS 158103 (D. Nev. Jan. 6,

2011) (quoting *In re Apex Oil Co.*, 958 F.2d 243, 245 (8th Cir.1992)); see also *Morgan v. Commercial Union Assur. Cos.*, 606 F.2d 554, 556 (5th Cir.1979); *LaFlamme*, 2010 U.S. Dist. LEXIS 98815, 2010 WL 3522378 at * 3. Rather, rebuttal expert testimony "is limited to new unforeseen facts brought out in the other side's case.'" *In re President Casinos, Inc.,* 2007 Bankr. LEXIS 4804 (E.D. Mo. May 16, 2007) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir.1991)) (emphasis added).

In this case, all of Defendant's alleged rebuttal experts reports deal with expected and anticipated aspects of Plaintiff's case disclosed in the Complaint on May 14. 2018.  It has been clear from the very beginning that Plaintiff alleged over service of alcohol and inadequate security resulted in her physical and emotional injuries, including but not limited to anxiety and post-traumatic stress disorder. [DE 1 at ¶¶ 14-15, 18-21, 26, 28, and 32-37]. As early as December 2018, Defendant asserted its claims that it provided adequate security and of alleged alcohol issues contributed to the incident.  See Defendant's Response to Interrogatory #1 attached as Exhibit "D."

There is no justification or basis for Defendant's liability experts Elizabeth Trendowski (dram shop, bar operations and liquor liability forensics) and Corey D. Ranslem (security) to be rebuttal considering their subjects of expertise were known and anticipated issues from the very beginning.

There is no justification or basis for Defendant's psychiatrist expert Dr. Allen Mark Singer to be rebuttal considering Plaintiff did not disclose any psychiatry expert for him to rebut.  Furthermore, Plaintiff disclosed her injuries of anxiety and post-traumatic stress disorder from the very beginning in her Complaint filed on May 14, 2018. [DE 1 at ¶ 26].

7

Plaintiff also produced her treating medical records setting forth her diagnoses of post-traumatic stress disorder, depression and anxiety related to the subject incident as early as November, 2018.   In addition, she disclosed these diagnoses in response to Defendant's Interrogatories in November, 2018.   See Plaintiff's Response to Interrogatory #10 attached as Exhibit "E."   Defendant's late disclosed expert Dr. Singer's report addresses these conditions that were disclosed nearly ten (10) months prior to the March 8, 2019 expert disclosure deadline.   There is no basis for his report to be rebuttal for these known and anticipated claims of injury.

There is no justification or basis for Defendant's vocational rehabilitation expert Dr. John Keel McKay to be rebuttal considering his report does not even mention Plaintiff's vocational rehabilitation expert Ms. Caruther's or her opinions.   Dr. McKay's report is not rebutting anything; however, is merely providing his untimely rehabilitation and vocational opinions that could have and should have been provided by March 8, 2019.

Expert testimony which is not truly rebuttal in nature shall not be allowed at trial, unless the failure to disclose information required by Rule 26(a) was "harmless" or "substantially justified." *Leaks v. Target Corp.,* 2015 U.S. Dist. LEXIS 87333, *11 (S.D. Ga. July 6, 2015) (citing to Fed. R. Civ. P. 37(c)(1)). The sanction of preclusion is "automatic and mandatory unless the sanctioned party can show its violation . . . was either justified or harmless." *R & O Constr. Co. v. Rox Pro Int'l Grp., Ltd.,* 2011 U.S. Dist. LEXIS 78032 (citing *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir. 1998)).   In this case, Defendant's untimely expert disclosures disguised as "rebuttal" was not justified or harmless.

Defendant's failure to timely serve its expert disclosures and reports containing a complete statement of all of Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay's opinions and the basis for those opinions has unduly prejudiced Plaintiff's ability to prepare her case for trial. Specifically, disguising its untimely experts "rebuttal" constitutes ambush, which is highly disfavored by courts. See *Perfect Web Techs. v. Info USA, Inc.*, 2008 U.S. Dist. LEXIS 20761, at *4-5 (S.D. Fla. Mar. 17, 2008) ("The concept of trial by ambush has long ago fallen into desuetude in both state and federal courts."); see also *Health & Sun Research, Inc. v. Australian Gold, LLC*, 2013 U.S. Dist. LEXIS 167151, *5 (M.D. Fla. Nov. 25, 2013) (citing to *United States v. Procter & Gamble Co.,* 356 U.S. 677, 682 (1958)) ("The purpose of discovery under the Federal Rules of Civil Procedure is to require the timely disclosure of relevant information to aid in the ultimate resolution of disputes in a civil action. These Rules 'make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'"). Indeed, Defendant's late disclosure disguised as rebuttal expert disclosures precluded Plaintiff from consulting with her own experts or hiring additional experts to submit a rebuttal disclosure. It also prejudiced Plaintiff's preparation for trial.   At the time of the late disclosure there was only about one (1) month left to conduct expert discovery, which was insufficient time to have Defendant's late expert reports reviewed by Plaintiff's experts or to hire a new expert to review the untimely reports in order to be able to be prepared to depose them in such a short time frame.   That pre-supposes Defendant's experts even had availability for deposition within that short time frame.   Notably, Defendant did not offer their availability for deposition during the expert discovery timeframe.

Plaintiff should not be prejudiced by Defendant's blatant disregard of the deadlines established by this Court and the Federal Rules of Civil Procedure for this case. Accordingly, Plaintiff respectfully submits that Defendant should be precluded from offering any evidence, testimony, and/or opinions from Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay. *Mann v. TASER Int'l, Inc.,* 588 F.3d 1291 (11th Cir. 2009) (affirming district court's exclusion of expert opinions not contained in the expert witness disclosure and not disclosed until after the deadline for expert disclosures).

## II.     Daubert Motion

### A.     Legal Standard

Pursuant to Rule 702 an expert witness may testify in the form of an opinion, if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. The district court serves as a gatekeeper to the admission of scientific testimony, by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11 Cir. 2005), quoting *McCorvery v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).

In determining the admissibility of expert evidence, the court engages in a rigorous three- part inquiry pursuant to Daubert and its progeny. Relevant expert testimony is admissible only if the trial court finds: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches

his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises Inc.,* 2009 U.S. Dist. LEXIS 86714 *2-3 (S.D. Fla. 2009) quoting *United States v. Frazier*, 387 F.3d at 1260; see also *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier,* 387 F.3d. 1244, 1260 (11th Cir. 2004). The party offering the expert testimony carries the burden of  laying the proper foundation and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). For the reasons set forth below, Dr. Hamilton and Dr. Singer fails to meet the required standard.

### B. Dr. Hamilton and Dr. Singer's opinions are inadmissible because they failed to utilize reliable methodology.

As a threshold matter, Federal Rule of Evidence 702(b) provides in order for expert opinions to be admissible, they must be based on sufficient facts or data. Fed. R. Evid. 702(b). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based on no research at all." *Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1330 (5th Cir. 1996). Moreover, "to be permissible, the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assoc., Inc. v. Bd. Of Educ. Of N. Plainfield*, 411 F. Supp. 2d 483, 488 (D.N.J. 2006); see also *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001) ("It is an abuse of discretion to admit expert testimony which is

11

based on assumptions lacking any factual foundation in the record."); *Greenwell v. Boatright*, 184 F.3d 492, 497 (6th Cir. 1999) (noting expert testimony "is inadmissible when the facts upon which the expert bases his testimony contradicts the evidence."). The Eleventh Circuit has held it is proper for a trial court to exclude expert testimony whose factual basis is not adequately explained. *Cook*, 402 F.3d at 1111.

Under *Daubert*, the reliability of the expert's methodology is a context-specific inquiry. *Tampa Bay Water v. HDR Eng'g, Inc.,* 731 F.3d 1171, 1184 (11th Cir. Fla. 2013) The Supreme Court has instructed district courts to weigh four factors in making their decision: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *United Fire & Cas. Co. v. Whirlpool Corp.*, 704 F.3d 1338, 1341 (11th Cir. 2013) (per curiam) (citing *Daubert*, 509 U.S. at 593-94). Courts must be careful to focus on the reliability of the expert's principles and methodology rather than the correctness of his conclusions. *Kipperman v. Onex Corp.,* 2009 U.S. Dist. LEXIS 71666 (N.D. Ga. 2009). An expert must be able to explain step by step how and why he reached his given conclusions. *Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274, 279 (2d Cir. 2004). Under *Daubert,* "any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible". This is true whether the step completely changes a reliable methodology or merely misapplies that methodology." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 745 (3d Cir. 1994). "In evaluating the reliability of an expert's method . . . a district court may properly consider whether the expert's methodology has been contrived to reach a

particular result." *Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1293 n.7 (11th Cir. 2005); see *Perry v. United States*, 755 F.2d 888, 892 (11th Cir. 1985) ("A scientist who has a formed opinion as to the answer he is going to find before he even begins his research may be less objective than he needs to be in order to produce reliable scientific results.").

### i.    Dr. Hamilton

Dr. Hamilton's opinions are completely unreliable, biased, and devoid of any scientific basis. As will be set forth below, his opinions are subjective, speculative, and unreliable. His opinions are essentially: (1) It was highly unlikely that, even if Ms. Major suffered a concussion, it could have led to any neuropsychological sequalae; (2) The neuropsychological testing he conducted was inconsistent with any neurocognitive disorder or PTSD; (3) Her testing noted over-endorsement of psychological/psychiatric symptoms and extreme defensiveness; and (5) He was unable to determine whether or not she suffered from any psychological disorder, secondary to the way in which she approached psychological testing. Dr. Hamilton failed to utilize a scientific methodology or reliable application to the facts to reach his conclusions.

Dr. Hamilton misapplied and mis-scored Plaintiff's Trauma Symptom Inventory-2 (TSI-2) test score.   His report indicated her TSI-2 score of 9 exceeded the manufacturer recommended cutoff score of 8. See report page 7. Dr. Hamilton opined that test score reflected that Plaintiff was over-endorsing her psychological/psychiatric symptoms to justify all of his opinions that she was not injured. However, a review of the actual Professional Manual for the TSI-2 reveals Dr. Hamilton is incorrect.   The TSI-2 Professional Manual actually indicates "A raw score of 15 on the ATR scale indicates invalidity and is the

recommended cutoff.   The cutoff score is to be used only when assessing individuals presenting in clinical or forensic contexts."   See page 14 of the TSI-2 Professional Manual attached as Exhibit "F."   Dr. Hamilton was disclosed as Defendant's "clinical" neuropsychologist.   See Defendant's Expert Witness Disclosure attached as Exhibit "A." So, according to the manufacture, Plaintiff's TSI-2 score of 9 was well within the acceptable range.   Dr. Hamilton was simply wrong and Plaintiff's TSI-2 test score does not support his incorrect opinion that she was over-endorsing her psychological/psychiatric symptoms.

Dr. Hamilton misapplied Plaintiff's Structure Inventory of Malingered Symptomatology (SIMS) test score.   His report indicated "on the SIMS, her total score of 16 was significantly elevated above the recommended cut off of 14, for the identification on feigning."   See report page 7.   Dr. Hamilton then opined that this reflected that Plaintiff was faking her psychological/psychiatric symptoms to justify all of his opinions that she was not injured. However, a review of the first paragraph of the actual Professional Manual for the SIMS reveals Dr. Hamilton is inaccurate.   The SIMS Professional Manual actually indicates "However, it is possible that feigned and actual symptoms may occur simultaneously.   That is a, a diagnosis of malingering does not preclude the presence of another actual disorder." See SIMS Professional Manual attached as Exhibit "G".   So, Plaintiff's SIMS score of 16 does not preclude the presence of her actual disorder and symptoms as Dr. Hamilton's incorrectly claims.

Dr. Hamilton's utilized unscientifically valid testing on Plaintiff.   He substituted the Wechsler adult intelligence scale III (WAIS-III) in the Heaton norms with the Wechsler adult intelligence scale IV (WAIS-IV).   That substitution made the otherwise peer reviewed and

scientifically valid Heaton norms no longer scientifically valid or peer reviewed.   By altering

the Heaton norms, Dr. Hamilton made it an unscientific battery without peer review.

Plaintiff's neuropsychological expert Dr. Koltiz-Russell testified:

> Well, all validity is dependent on the same individuals in the brain damage
> group and in the control group who has no brain damage, taking all of the same
> tests.   And then statistics are performed to determine error measurements,
> validity measurements, and so forth, probability of brain injury.   If you change
> a test, then there is no scientific research on the WAIS-IV and the
> comprehensive norms, so it makes what we call a flexible battery, just putting
> together a bunch of tests together, but not being able to ascertain any probability
> of brain damage, measure anything else.

See page 80, line 16 to page 81, line 16 and page 84, line 17 to page 86, line 5 of the deposition

transcript of Dr. Kolitz-Russell attached as Exhibit "H."   Dr. Hamilton cherry-picked the

tests he wanted to use to form his opinions and did not use the scientifically valid and peer

reviewed full battery of tests for the Heaton norms.   Accordingly, Dr. Hamilton's testing of

Plaintiff is scientifically invalid and does not support his opinions.

Dr. Hamilton's opinions failed to take into account the significance of the "practice

effect" on his test results.   "Practice effect" refers to if an individual is administered the same

tests within a short amount of time (less than approximately six months), they will do better

because they have just had the test.   Dr. Kolitz-Russell referenced research that discusses

practice effect.   Dr. Hamilton's testing took place a mere three months after Dr. Kolitz-

Russell's testing.   That would certainly explain why Plaintiff did better on some of Dr.

Hamilton's tests as compared to the same tests administered by Dr. Kolitz-Russell three

months prior.   For example, Plaintiff was moderately impaired on Trails B test for Dr.

Kolitz-Russell and only mildly impaired on the Trails B test for Dr. Hamilton.   See page 83,

line 9 to page 84, line 16 of the deposition transcript of Dr. Kolitz-Russell attached as Exhibit

"H."   Dr. Hamilton's failure to take the well-known and researched "practice effect" into account undermines his opinions.

In summary, Dr. Hamilton's test results for Plaintiff were invalid because he substituted the WAIS-IV, not having a scientific (peer reviewed) battery; not being able to get an average impairment score; not taking into consideration the practice effect with just three months in between testing; and Plaintiff did not fail the TSI-2 or SIMS, of which he based the majority of his opinion.   See page 85, line 7 to page 89, line 13 of the deposition transcript of Dr. Kolitz-Russell attached as Exhibit "H."

Dr. Hamilton did not apply a reliable scientific methodology in reaching his opinions. The Court requires more than simply "taking [Dr. Hamilton's] word for it." See *Masferrer*, 367 F. Supp. 2d at 1372 ("The trial court's gatekeeping function requires more than simply taking the expert's word for it"); *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (an expert opinion is not admissible when the only connection between the conclusion and the existing data is the expert's own ipse dixit). Thus, under *Daubert* and Rule 702, Dr. Hamilton's opinions must be stricken because he does not utilize reliable methodology in reaching his opinions.

### ii.    Dr. Singer

Dr. Singer's opinions are completely unreliable, biased, and devoid of any scientific basis as he failed to conduct any evaluation or testing of his own and relied only upon records that he misconstrued to improperly form the basis of his opinions.   His opinions are subjective, speculative, and unreliable. Dr. Singer's opinions have been rendered without fully considering the evidence in this case or by purposely disregarding facts in the record.

Dr. Singer fails to identify and/or utilize a scientific methodology or reliable application to the facts to reach his conclusions. His opinions are essentially: (1) There was no evidence whatsoever that Ms. Major was rendered unconscious or had any significant head injury due to the fight at the casino.   The two neutral eyewitnesses explicitly contradicted this history; (2) The history presented by Ms. Major to both Dr. Kolitz-Russell and Dr. Nedd characterized the event in a way that significantly different from what was characterized by the witnesses and the medical record.   This significantly impacted the conclusions of Dr. Kolitz-Russell and Dr. Nedd.; (3) There is evidence that Ms. Major may have been trying to distort the medical record to further her legal case; and (4) There was a clear pattern of misattributing or over attributing Ms. Majors multiple medical and psychological issues to the incident that occurred on the Imagination rather than to aa continuation of previous medical and physical problems.   Additionally, there were multiple other factors that significantly contributed to Ms. Major's presentation that were minimized in importance.

Dr. Singer bases his opinions on a records review only (evaluations and interviews that he did not conduct), and therefore, he cannot establish that his opinions are reliable. Further, Dr. Singer did not conduct any tests on Ms. Major or even speak with her. Dr. Singer's report indicated in reference to his opinions:

> They are subject to change with further information.   As the conclusions in this report were limited to a document review, I did not give a diagnostic assessment or formulation but rather commented on the opinions given by other reviewers.
> I am available to evaluate Ms. Majors in person as requested and that that time would have the information required for me to make a full diagnostic evaluation.   At that point I would be ready to comment on appropriate treatment, prognosis, etc. based my findings in said diagnostic assessment.

See page 26 of Dr. Singer's report attached as part of Exhibit "C". Dr. Singer concedes he did not do a full diagnostic evaluation and his opinions are not complete without the evaluation of Plaintiff.

Dr. Singer merely regurgitates what others have said in the light most favorable to Defendant.   Dr. Singer appears to either ignore or not consider the significance of the testimony of the neutral witness Tobias Tucker that the female assailant kicked Plaintiff in the eye, the photograph reflecting Plaintiff's black eye (clearly showing trauma to her head); the testimony of the casino manager Jenifer Gianan, who had medical training, that she did not know the difference between the signs and symptoms of intoxication versus the signs and symptoms of concussion; and the testimony of eye witnesses placing the male assailant close enough to Plaintiff that he could have kicked her.   He disregards all of the consistencies in Plaintiff's various accounts of the incident and her allegations.   He mischaracterizes Plaintiff's use of substances.    He takes Plaintiff's portions of medical history and past out of context.   He refers to a prior possible diagnoses as an actual diagnoses.

Dr. Singer's opinions relied heavily on Dr. Hamilton's testing and opinions.   See pages 14-15 and 20 of his report.   As set forth above, Dr. Hamilton used an unscientific test battery and inaccurately interpreted the TSI-2 and SIMS test results to reach a conclusion to favor Defendant (his client). Apparently, Dr. Singer does not understand the testing and does not know the proper scoring.   He obviously accepted everything that Dr. Hamilton represented and failed to consult the Professional Manuals for guidance. Dr. Singer's heavy reliance on Dr. Hamilton invalidates his own opinions.   As the saying goes, garbage in means garbage out.

Furthermore, Dr. Singer either did not understand HRNES-R[1] testing performed by Dr. Kolitz-Russell or purposely misstated its results to support his opinions in favor of the Defendant.   First of all, Dr. Singer's report indicates scores on the HRNES-R *over* 96 are considered abnormal. See page 2 of his report. Dr. Singer is incorrect.   The reality is scores *below* 96 are considered abnormal.   Secondly, Dr. Singer's report references the HRNES-R test result of 64 percent probability of brain injury as "probably can easily be explained by chance."   See page 19 of his report.   Dr. Singer either does not understand or failed to consult the HRNES manual to know that the 64 percent has nothing to do with chance.   The reality is the HRNES-R test result of 64 percent probability of brain injury is based on statistics of the HRNES-R.   So, it cannot be chance alone.   It is in the battery of statistical program. See page 82, lines 9 to 16 and page 90, lines 2 to 13 of the deposition testimony of Dr. Kolitz-Russell attached as Exhibit "H."   Lastly, Dr. Singer does not understand that the Heaton and HRNES-R norms were in agreement in Dr. Kolitz-Russell's testing.   See page 90, lines 13 to page 92, line 3 of the deposition testimony of Dr. Kolitz-Russell attached as Exhibit "H."

The record is clear that Dr. Singer did not base his opinions on the entire record of evidence; rather he essentially cherry-picked the facts he wanted to use to form his opinions, while ignoring less favorable, albeit critical facts. Dr. Singer did not apply a scientific methodology in reaching his opinions. The Court requires more than simply "taking [Dr. Singer's] word for it." See *Masferrer*, 367 F. Supp. 2d at 1372 ("The trial court's gatekeeping

---

[1] Dr. Singer also incorrectly refers to the HRNES-R test as "unstandardized"; however, provides no support or basis for that assertion. The HRNES-R test is published by Western Psychological Services.   Prior to its publication, it was reviewed it for validity, error, probability, statistics and so forth.   It continues to be sold in various states throughout the United States.   It is being published by a company in Australia and New Zealand.   See page 70, line 18 to page 74, line 4 of the deposition testimony of Dr. Kolitz-Russell attached as Exhibit "H".

function requires more than simply taking the expert's word for it"); *McDowell v. Brown*, 392 F.3d 1283, 1300 (11th Cir. 2004) (an expert opinion is not admissible when the only connection between the conclusion and the existing data is the expert's own ipse dixit). Moreover, Dr. Singer has offered no explanation as to how his experience in a completely unrelated field of psychiatry leads to the conclusions proffered in neuropsychology in this case. Thus, under *Daubert* and Rule 702, Dr. Singer's opinions must be stricken because he does not utilize any identifiable, much less reliable, methodology in reaching his opinions.

**D.     Dr. Singer and Dr. Hamilton's opinions do not assist the trier of fact to understand any of the evidence in this case or to determine any fact at issue, and will only confuse and mislead the Court and the Jury.**

The final requirement for admissibility under Rule 702 is whether the expert's testimony will assist the trier of fact. *Kipperman v. Onex Corp.*, 2009 U.S. Dist. LEXIS 71666 (N.D. Ga. 2009). In order to ensure that expert testimony will assist the trier of fact, the court must ensure that the "proposed expert testimony is 'relevant to the task at hand,' . . ., i.e., that it logically advances a material aspect of the proposing party's case." *Dukes v. State*, 428 F. Supp. 2d 1298, 1309 (N.D. Ga. 2006). The Supreme Court has described this test as one of "fit," and "scientific validity for one purpose is not necessarily scientific validity for other related purposes." *Daubert*, 509 U.S. at 591. Further, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier,* 387 F.3d at 1262-63. In other words, "Expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Masferrer,* 367 F. Supp. 2d at 1373.

Dr. Hamilton and Dr. Singer's opinions must be excluded because they will neither help the Court or trier of fact understand the evidence nor assist in determining any fact at issue.   In the instant matter, Dr. Hamilton and Dr. Singer's opinions are not helpful. As a threshold matter, Dr. Hamilton and Dr. Singer's opinions are based upon nothing more than his own say-so. Expert opinion is not admissible merely because the expert says it is so. See e.g., *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1372 (S.D. Fla. 2005) ("The trial court's gatekeeping function requires more than simply taking the expert's word   for it."); *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3d Cir. 2002) ("it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Slaughter v. Southern Talc. Co.*, 919 F.2d 304, 307 (5th Cir. 1990) ("[W]ithout more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible."). Additionally, as noted above, Dr. Hamilton and Dr. Singer fails to utilize a reliable scientific method which objectively explains how they validly reached their conclusions. Dr. Hamilton and Dr. Singer's opinions are also based upon a number of assumptions not supported by the evidence. As Dr. Hamilton and Dr. Singer's opinions are subjective, speculative, and unreliable and their methodology is inadequate pursuant to the applicable case law, they should be precluded from testifying in this matter as their opinions are not helpful to the trier of fact and, in fact, are more likely to confuse the jury. See *Legg*, 2014 U.S. Dist. LEXIS 61322, at *11; *Byrne v. Liquid Asphalt Sys.*, 238 F. Supp. 2d 491 (E.D.N.Y. 2002); *Montgomery v. Aetna Casualty & Surety Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (holding district courts must take care to weigh the value of expert testimony against its potential to mislead or confuse because

expert testimony may be assigned talismanic significance in the eyes of lay jurors) (emphasis added).

## III.    Conclusion

Defendant's experts Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, and John Keel McKay should be precluded from offering any opinions at trial because (1) they were not timely disclosed as expert witnesses and (2) their opinions are not rebuttal.

Defendant's experts Allen Mark Singer and Dr. Richard Hamilton did not (1) utilize a proper and reliable methodology to survive a *Daubert* challenge; (2) they base their opinions on assumptions and speculation, not facts; and, (3) their opinions would confuse instead of assist the trier of fact.

WHEREFORE, Plaintiff, CHARLENE MAJOR, respectfully requests that this Honorable Court enter an Order striking Allen Mark Singer, Elizabeth Trendowski, Corey D. Ranslem, John Keel McKay and Richard Hamilton as experts and precluding Defendant from introducing any of their opinions at trial, and for all other relief deemed just and proper under the circumstances.

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (3)

Undersigned counsel hereby certifies that counsel for the parties have conferred in a good faith effort to resolve the issues raised in the motion and have been unable to do so. Defendant objects to the relief sought in this motion.

### CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some electronically Notices of Electronic Filing.

Respectfully submitted by:

BY: s/TonyaJMeister
TONYA J. MEISTER
FLORIDA BAR NO.: 0629243
Courthouse Tower, Suite 75
44 West Flagler Street
Miami, FL 33130
TEL: (305) 590-5570
FAX: (305) 675-3787
E-MAIL: TonyaJMeister@aol.com
*Attorney for Plaintiff*

     And

Christopher M. Drury, Esq.
**DIMOND KAPLAN & ROTHSTEIN, P.A.**
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Miami, Florida   33133
TEL: (305) 374-1920
EMAIL: cdrury@dkrpa.com
*Attorney for Plaintiff*

## SERVICE LIST

### CHARLENE MAJOR v. CARNIVAL CORPORATION

### CASE NO.: 18-21914-CIV-SCOLA

### United States District Court Southern District of Florida

Tonya J. Meister, Esq.
**MEISTER LAW, LLC**
Courthouse Tower, Suite 75
44 West Flagler Street
Miami, FL 33130
TEL: (305) 590-5570
FAX: (305) 675-3787
E-MAIL: TonyaJMeister@aol.com
*Attorney for Plaintiff*

Christopher M. Drury, Esq.
**DIMOND KAPLAN & ROTHSTEIN, P.A.**
Offices at Grand Bay Plaza
2665 South Bayshore Drive, PH-2B
Miami, Florida   33133
TEL: (305) 374-1920
EMAIL: cdrury@dkrpa.com
*Attorney for Plaintiff*

Victor J. Pelaez, Esq.
**MASE MEBANE & BRIGGS, P.A.**
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
Tel: (305) 377-3770
Fax:   (305) 377-0080
Email: vpelaez@maselaw.com
*Attorneys for Defendant*